Argued October 30, reversed with instructions December 13, 1961

## SIMONS ET UX *v.* SMITH
### 366 P. 2d 875

*Richard D. Nelson*, Portland, argued the cause and filed a brief for appellant.

*George F. Rakestraw*, Redmond, argued the cause and filed a brief for respondents.

Before McAllister, Chief Justice, and Rossman, Warner, Sloan, O'Connell, Goodwin and Lusk, Justices.

GOODWIN, J.

Gerald L. Smith, the father of two girls, appeals from a decree which granted, over his timely objection, a petition by his former wife and her present husband to adopt the Smith children.

As a general proposition, the law protects the natural rights of parents. *Pierce v. Society of Sisters*, 268 US 510, 534-35, 45 S Ct 571, 69 L Ed 1070, 39 ALR 468 (1924) (dictum). In the ordinary case, adoption statutes require the consent of both natural parents. ORS 109.312. Only where the parent is under some disability or is at fault in a matter related to the parent-child relationship is his consent dispensed with.[1] There is, however, one apparent exception to this statutory scheme, viz., ORS 109.314:

"* * * Consent where custody of child has been awarded in divorce proceedings. If the legal custody of the child has been awarded in divorce proceedings, the written consent of the person to whom custody of the child has been awarded may be held sufficient by the court; but, unless the parent not having custody consents to the adoption, a citation to show cause why the proposed adoption shall not

be made shall be served in accordance with ORS 109.330 upon the parent not having the custody, and the objections of such parent shall be heard if appearance is made. This section does not apply where consent is given in loco parentis under ORS 109.316 or 109.318."

The only question on this appeal is whether ORS 109.314 can be enforced literally to cut off the rights of a father who is free from the disabilities or faults which, under the statutes cited in note 1, supra, permit termination of a parent's rights.

The quoted statute expressly confers jurisdiction upon the trial court to enter the decree complained of. Thus, the principal contention of the nonconsenting parent, that the court was without jurisdiction, is plainly devoid of merit unless there is some reason why the statute should not be given literal effect. Implicit in this appeal, therefore, is an underlying assumption by the nonconsenting parent that fundamental considerations of due process of law require us to reexamine the statute as applied to the facts of this case.

The nonconsenting parent contends that since ORS 109.314 contains no basis for deciding when the court may ignore his protests, this court must either:

(a) Strike down the statute as repugnant to due process of law;

(b) Read into the statute the requirement that the

---

[1] See, e.g.:

ORS 109.316 Consent by State Public Welfare Commission or an approved child-caring agency of this state.

109.322 Consent where parent mentally ill, mentally deficient or imprisoned.

109.324 Consent where parent has deserted or neglected child.

419.523 Termination of parental rights; grounds.

trial court exercise judicial discretion and then reverse for manifest abuse thereof; or

(c) Construe the right to be heard to mean that the parent who appears and objects must prevail unless he falls under one or more of the sections which provide when and in what circumstances the rights of such a parent may be terminated.

■ It goes without saying that the first alternative should be avoided if possible.

The second alternative would require the trial court in each case to decide upon some recognizable legal ground that the nonconsenting parent had no further rights.

■ The reason for terminating parental rights ought to be related to the parent's conduct as a parent. In their most palatable form, discretionary statutes require the trial judge to consider "the best interests of the child". Courts which base their decisions on "the best interests of the child" use that term as a term of art borrowed from divorce jurisprudence. Cf. cases collected in Annotation, 47 ALR2d 824. This rationale is unacceptable for several reasons.

In divorce cases, the right of one parent to share child custody with the other becomes subordinate to the welfare of the child precisely because the divorce makes natural family life impossible. Since a child is not divisible, one parent must yield; and, since it is the parents who have destroyed the natural habitat of the child, it is proper that the adverse effects of the divorce upon the child be minimized as much as possible. Thus, the court chooses the environment which is the more suitable for the child, or, more accurately, the less unsuitable for the child. This choice, moreover, is limited to the parents unless both are

manifestly unfit. *Gustin v. Gustin*, 59 Or 226, 116 P 1072 (1911).

The best-interests-of-the-child standard has no similar relation to the issues presented in a proceeding to dispense with consent for an adoption. In an adoption, a court is asked to terminate every right and interest of the natural parent. Adoption goes far beyond the child-centered question of custody during minority. Indeed, the denial of an adoption petition has no necessary bearing on the physical custody of the child. The child's environment can be protected in a number of ways, under the divorce laws and the juvenile code. The petition to adopt concerns a different kind of right, the subjective tie between a parent and child, the right of a parent to be identified with his child for emotional, religious or other reasons. A father may hope his son will bear his name; a mother may anticipate that her daughter will inherit her property. On the other hand, there is ordinarily no vital interest of the child which requires the termination of his parents' rights. The use of a convenient name, for example, need not require the formality of adoption. Where there is an exceptional case which does require the liquidation of parental rights, the statutes cited in note 1, supra, cover the situation.

The difference between divorce and adoption discussed above, while of vital importance, may not have been readily apparent when ORS 109.314 was enacted. Oregon General Laws 1919, ch 45. The statute was no doubt intended to provide a procedure to speed adoptions where a divorced parent had disappeared and to prevent dog-in-the-manger tactics by disgruntled parents. Commendable as the motive behind such legislation may be, the effect thereof on the rights of parents could be grossly unjust. In 1919, however, two

factors tended to militate against injustice. First, divorces then were more difficult to obtain and less fashionable than they now appear to be. While the grounds on which they were granted, Olson's Oregon Laws, § 507 (1920), were substantially the same as are now found in ORS 107.030, the prevailing party as a general rule was required to make a showing of truly reprehensible conduct on the part of the other spouse. *Bowers v. Bowers*, 98 Or 548, 194 P 697 (1921). At present, in the relatively few contested cases we have, inhumanity need not be shocking to provide grounds for a divorce. See *Flanagan v. Flanagan*, 188 Or 126, 213 P2d 801 (1950), and the statement of LUSK, J., in *Guinn v. Guinn*, 188 Or 554, 561, 217 P2d 248 (1950).

Further, even if Oregon divorce practice were the same today as it was 40 years ago, we are not an island unto ourselves. Certain other states have made it less than difficult to obtain a divorce. Under the first *Williams* decision, *Williams v. North Carolina*, 317 US 287, 63 S Ct 207, 87 L Ed 279, 143 ALR 1273 (1942), we must give full faith and credit to divorce decrees of other states unless the foreign court had no jurisdiction.[2] Full faith and credit must be accorded a custody decree until such a decree is set aside. See discussion in Leflar, Conflict of Laws 346, § 180 (1959). A custody decree may not reflect any disability or fault as a parent on the part of the parent denied custody. See, e.g., *In re Candell*, 54 Wash2d 276, 340 P2d 173 (1959), in which, though the court assumed that the parent not having custody evinced an intention to surrender his parental rights by suffering a default decree in another state, the decision to dispense

---

[2] Lack of jurisdiction in the divorcing court is, of course, fatal. Williams v. North Carolina, 325 US 226, 65 S Ct 1092, 89 L Ed 1577, 157 ALR 1366 (1944).

with his consent applied a Washington statute similar to ours and simply held that the consent of a divorced parent was not necessary because the parent did not retain custody.

■ Still a further reason why different considerations apply in divorce-child-custody cases than in adoption proceedings today may be found in the almost invariable practice of the courts in 1919 to give custody to the parent who obtained the divorce. This practice normally favored the parent who appeared to be the less blameworthy in the divorce. Such a practice is no longer prevalent; indeed, until recently (*Shrout v. Shrout*, 224 Or 521, 356 P2d 935 (1960)), this court for several years followed the practice of awarding custody of a child of tender years to its mother even though the mother's misconduct caused the divorce. E.g., *Wengert v. Wengert*, 208 Or 290, 301 P2d 190 (1956); *Goldson v. Goldson*, 192 Or 611, 236 P2d 314 (1951); *Ruch v. Ruch*, 183 Or 240, 192 P2d 272 (1948). On more rare occasions, we have held that a father against whom a decree of divorce has been granted should nonetheless be given custody. E.g., *McFadden v. McFadden*, 206 Or 253, 292 P2d 795 (1956). Thus it can be seen that the "innocent" party in the marriage failure frequently sees the children go to the "guilty" spouse. Accordingly, the failure to be awarded custody does not carry today the same imputation of unfitness that it may have carried in 1919. This is the type of situation which fathered the maxim, *mutata legis ratione mutatur et lex*. If a reason for ORS 109.314 ever was the imputation of unfitness which accompanied the award of custody to the other party, that reason has disappeared. Consequently, the statute ought to be read in the light of present conditions. At the very least there should be some correlation be-

tween a parent's conduct as a parent and the state's power to cut off his parental rights.

■ The distinction between the issues presented by adoption cases and those posed by custody cases is further highlighted by the fact that in Oregon the parent initially losing custody retains the right to ask for and be awarded custody in the event of the death, subsequent divorce, or other change in the circumstances of the prevailing party making it advisable to restore the child to the other parent. Adoption, of course, terminates all such rights of the natural parents. Both common sense and fundamental due process would suggest that such inchoate rights should not be cut off without a substantial reason. Cf. *Volz et ux. v. Abelsen*, 190 Or 319, 323, 224 P2d 213, 225 P2d 768.

In *Read v. Read,* 73 Adv Sh 695, 229 Or 113, 366 P2d 164, this court considered a motion to modify a decree which granted a divorce to the husband but awarded custody of the children to the wife. Later, the wife married the adulterer who broke up her first marriage. Under the interpretation of ORS 109.314 urged by the adoptive petitioners in the case at bar, the woman in *Read v. Read* would have been able to present the children to her new spouse as the spoils of an adoption decree if she had not lost their custody as the result of persistent litigation by their father. We hasten to add that there is no comparison between the facts of the *Read* case and those behind the case at bar. We refer to the *Read* case, however, to show what ORS 109.314 would mean if given the effect now claimed for it.

If ORS 109.314 should be widely employed as urged by the petitioners in this case, contested divorces would no doubt become even more acrimonious than

they now are. Lawyers scarcely need reminding that uncontested divorces frequently occur because the parties can agree on which unsatisfactory solution is in the better interest of the child. In other cases, no matter who obtains custody, the award frequently is made by the trial judge with grave misgivings. To give such decrees the stark finality now claimed for them would create problems of constitutionality which should be avoided if possible.

Because of the differences between the issues involved in divorce cases and those involved in petitions of adoption, we hold that the reasons for terminating parental rights must be related to an objective standard required of all parents rather than to the child-oriented evaluation of competing home environments employed in divorce suits. See *In re Adoption of Walton*, 123 Utah 380, 382-384, 259 P2d 881, 883 (dictum).

■ Reading ORS 109.314 in light of the balance of ORS ch 109, the statute can be made to comply with the demands of due process and with the legislative intent revealed in the adoption code. Once a parent appears and objects, his objection is binding, unless by giving attention to the requirements of at least one other statute which sets forth a recognizable and defensible ground for cutting off the natural rights of parents the trial court can properly conclude that the objector has no further rights. This interpretation of the statute requires the parties to plead and prove their case by reasonably objective standards whenever an adoption is actively resisted. This choice renders ORS 109.314 somewhat redundant in contested adoption cases, but saves it from attack upon constitutional grounds.

The adoptive parents in the case at bar rely primarily upon an earlier version of ORS 109.314 as it

was construed and applied in *Burrell et ux v. Simpson*, 203 Or 472, 280 P2d 368. The *Burrell* case holds that a court having adoptive jurisdiction may proceed with the adoption without the written consent of the object-ing parent. The only issue presented in the *Burrell* case was that of jurisdiction to proceed. There was jurisdiction. While it is true that in the *Burrell* case the nonconsenting parent was something less than a model father, the petitioners did not attempt to bring the objector within the terms of any of the statutes we have noted in the margin. Thus, the *Burrell* case at least superficially supports the proposition that the mere loss of custody in an antecedent divorce case, standing alone, can result in the forfeiture of all other rights of parenthood. However, the case does not so hold, and we will not read any such meaning into it.

In the *Burrell* case, we stated that notice to the parent and the opportunity to be heard satisfied the constitutional requirement of due process of law. How-ever, when the parent appears and asserts his continu-ing interest in the child, none of the authorities cited in the *Burrell* case goes so far as to say that such a parent's rights may be disregarded merely because he is divorced. On the contrary, the better-reasoned au-thorities seem to favor the rule that the mere loss of custody in the divorce does not obviate the necessity of consent to adoption, and that without consent there must be some conduct upon the part of the nonconsent-ing parent which indicates an intent to abandon or forfeit the natural rights of parenthood. Annotation, 47 ALR2d 824, 830. As we have observed, the assump-tion is sometimes made that when a nonconsenting parent suffered a default divorce he "exhibited a will-ingness on his part to relinquish all parental rights." *In re Candell*, 54 Wash2d, supra at 283. Such an

assumption, however, can not be supported on the basis of default-divorce practices in Oregon, whatever may be the situation elsewhere.

In general, statutes which dispense with the consent of the natural parent require a pleading and proof of moral fault, the degree of which may vary from state to state and from statute to statute. Running through such statutory schemes is the idea that the parent to be forever alienated from his child must have demonstrated either an intent to abandon the child or such moral depravity as to amount to the equivalent of an abandonment. See, e.g., *Stalder v. Stone*, 412 Ill 488, 107 NE2d 696, 35 ALR2d 653, and cases collected in the accompanying annotation, 35 ALR2d 662.

ORS 109.314 and its counterparts found in a number of states appear to be unexplained exceptions to the usual requirement of fault. Under these statutes, the mere failure to win custody in an antecedent divorce suit is treated as a jurisdictional fact sufficient to dispense with consent. The conferring of jurisdiction appears to end all discussion of how that jurisdiction should be exercised. See, e.g., *In re Adoption of a Minor*, 214 F2d 844 (App DC 1954), 47 ALR2d 813, and cases noted in the accompanying annotation. However, we hold that the right to be heard under ORS 109.314 includes the right to enforce one's objections so long as the objecting parent has not, through his own conduct, forfeited his parental rights. Conduct grave enough to justify the forfeiture of parenthood must consist of something more than mere failure to obtain custody in a divorce suit.

We believe that if the question had been put to this court in the *Burrell* case in the same manner as it is presented in the case at bar, i.e., with a father who was substantially free from fault, the *Burrell*

opinion would have contained language less sweeping than we now find therein. However, nothing in that case compels the conclusion that the constitutional rights of a parent can lawfully be ignored merely because the court has jurisdiction to proceed without the consent of such parent. Under ORS 109.314 the court continues to have jurisdiction to proceed, but, when a parent appears and objects, the court must sustain his objections unless it appears that he has lost his rights because of circumstances covered elsewhere in the code.

Accordingly, the decree is reversed with instructions to dismiss the petition; costs to neither party.