Argued September 10, reversed October 21, petition for rehearing denied November 17, 1970

IN THE MATTER OF THE ADOPTION OF
CRAIG EDWARD VOORHIES
MOODY ET UX, *Respondents, v.* VOORHIES,
*Appellant.*

475 P2d 579

*Noreen A. Saltveit*, Portland, argued the cause and filed briefs for appellant.

*Rodney C. Adams*, Beaverton, argued the cause for respondents. With him on the brief were Thompson & Adams and Jon B. Lund, Beaverton.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN,* TONGUE, HOWELL and MENGLER, Justices.

MENGLER, J. (Pro Tempore).

This is an appeal by Anthony Voorhies from a decree which allowed a petition by his former wife, now Linda L. Moody, and her present husband, Paul W. Moody, to adopt his son, Craig Edward Voorhies.

The Court of Appeals affirmed the decision of the trial court on May 21, 1970, at 2 Or App 491, 469 P2d 642, and this court granted a petition for review, July 21, 1970.

The child was born July 9, 1964. The natural parents were divorced on December 23, 1965. Custody of the child was awarded to the mother. The decree did not require support payments. The mother remarried on March 18, 1966. The child has lived with the mother and her husband since the remarriage.

The father was voluntarily in a state hospital from November 19, 1964, to March 23, 1965; in Morningside hospital from July 28, 1965, to January 3,

---

* Holman, J., did not participate in this decision.

1966; court-committed to a state hospital on January 3, 1966, as a mentally ill person in need of treatment and released March 3, 1967; enrolled in a Division of Vocational Rehabilitation workshop from March 3, 1967, to March 7, 1968; voluntarily returned to a state hospital on March 7, 1968, and remained until July 30, 1968, when he entered the Veteran's Administration Hospital in Roseburg, where he remained until January 24, 1969, when he was paroled to a foster home.

The father had no earned income during the year immediately preceding the petition for adoption. On July 30, 1968, he began receiving $105 per month from the Veterans Administration for a 50 per cent disability—30 per cent for a nervous condition and 20 per cent for gunshot wounds—and $90 per month from Social Security in the fall of 1968. No request was made to him by his former wife for support payments. During the same period, the father did not visit or communicate with the child.

A petition to adopt the child was filed January 20, 1969. The natural father appeared by his guardian ad litem and objected.

■ When legal custody is awarded in a divorce proceeding, the consent of the parent to whom custody is awarded may be sufficient in an adoption proceeding, but unless the other parent consents he must be served and given opportunity to appear. If he appears and objects, that objection is binding unless the court finds that one of the statutory criteria for obviating his consent has been met. ORS 109.314. *Simons et ux v. Smith*, 229 Or 277, 285, 366 P2d 875, 878, 879 (1961).

The trial court found that the father had wilfully deserted the child without just and sufficient

cause for a period of one year next preceding the filing of the petition and that consent of the father to the adoption was not required under ORS 109.324, which states in part:

"* * * Upon hearing being had, if the court finds that such parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, the consent of such parent at the discretion of the court is not required and, if the court determines that such consent is not required, the court shall have authority to proceed regardless of the objection of such parent."

█ Although ORS 109.324 appears to dispense only with the necessity of consent to an adoption, it is apparent that the parental rights of a non-consenting parent are as effectively terminated by the decree entered thereunder as they would have been if the decree were entered under ORS 419.523 (2)(b), which permits a juvenile court on the same grounds to terminate parental rights.

█ The best-interest-of-the-child rule, as applied in determining custody, is applicable to adoptions, but it cannot be considered without the consent required by ORS 109.314, or by a judicial determination that the necessity of consent is obviated by a judicial finding that the criteria of ORS 109.322, or ORS 109.324, or ORS 419.523 have been met. *Simons et ux v. Smith*, *supra*.[1]

---

[1] For a careful and thoughtful discussion of the difference between the application of the best-interest-of-the-child test in a custody proceeding and the statutory requirement for dispensing with a parent's consent in an adoption proceeding, see the discussion of Justice Goodwin in Simons et ux v. Smith, 229 Or at page 281, 366 P2d at pages 876-877.

■ Therefore, the fact that the adoptive parent may be able to provide an environment free from the problems accompanying the mental illness of the father or that the child has become adjusted and emotionally attached to the adoptive parent is not relevant, until the criteria of ORS 109.324 have been met.

The trial court found that the father, who had been adjudged mentally ill, did not remain so at the time of the adoption proceeding. No cross-appeal was taken from that finding. The question of whether the father's mental illness obviated the necessity of consent as provided in ORS 109.322 is not before us. Therefore, the only question before this court on review is: Did the father wilfully desert the child for one year immediately preceding the filing of the petition for adoption without just and sufficient cause?

■■ The term desertion as used in ORS 109.324 evinces a settled purpose to forego, abandon, or desert all parental duties and parental rights in the child. The term wilful requires that the desertion be volitional or voluntary. *Omlie et ux v. Hunt*, 211 Or 472, 482, 316 P2d 528, 533 (1957).

The evidence establishes that the father was for the last ten and one-half months of the year immediately preceding the filing in a mental hospital and for the other one and one-half months he was in a shelter workshop operated by the Division of Vocational Rehabilitation where he had been placed after release from a mental hospital.

■ The separation of the father from his child was occasioned by his voluntary and court-committed confinement in a mental institution, first beginning

within four months from the birth of the child. His continuing mental illness, hospitalization, and treatment, including shock therapy, required separation from his son and made any meaningful relationship with his son difficult, if not impossible. The apparent abandonment of the father-son role cannot be held to be a volitional act. The father did not make the choice of being mentally ill.

The testimony of the treating psychiatrist supports this conclusion:

"Q. * * * Do you have an opinion, based on your examinations of him and based on your conversations with him, with respect to whether Tony has, in fact, from the volitional and mental standpoint, deserted or abandoned his son?

"A. No. I think the emotional disorder that led to his first hospitalization in 1964 and subsequently was not volitional—therefore required separation from his family was not a volitional separation from his son. * * *."

The public and the courts have become increasingly impatient with the seemingly irresponsible non-custodial parent who wishes to retain natural rights in his child, but is neglectful and irresponsible in exercising the parental role. A child ought to have an enforceable right to an acceptable family life even if it requires terminating parental rights. Be that as it may, courts are bound by the language of the statutes and cannot rearrange parent-child relationship except when the statutory criteria have been met. *Strobel v. Garrison,* 255 Or 16, 459 P2d 1001 (1969), rehearing denied 255 Or 29, 464 P2d 688 (1970). Here neither the criteria of ORS 109.322 nor ORS 109.324 have been met.

The decree of the trial court is reversed.

DENECKE, J., specially concurring.

I concur in the result; however, I would dismiss the proceeding upon the ground that we should not have granted the petition for review. The case is of great importance to the parties; however, it does not involve any question of legal or public significance. See *State v. McLean,* 255 Or 464, 468 P2d 521, 529 (1970).