Argued April 19, affirmed June 9, 1972

In the Matter of Wilson, Cheryl, a Child (No. 6543)

In the Matter of Wilson, Pamela, a Child (No. 6544)

In the Matter of Wilson, Bonnie Delores, a Child
(No. 6542)

In the Matter of Shults, Raymond D., a Child
(No. 3540)

STATE ex rel JUVENILE DEPARTMENT OF
JACKSON COUNTY, *Respondent, v.*
WILSON, *Appellant.*

497 P2d 871

*Douglas P. Cushing,* Medford, argued the cause for appellant. With him on the briefs were Frohnmayer & Deatherage, Medford.

*John H. Clough,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FOLEY, J.

The circuit court terminated the parental rights of appellant to four of her children and she appeals.

The four children were born in 1959, 1963, 1965 and 1967. During 1967 and early 1968 these four children were taken into the temporary custody of the Jackson County Welfare Department and placed in foster homes.

Appellant is the mother of six additional children, having had issue with each of three men. She was married to two of the men, but her last three children, she testified, were by Jack Davis, with whom she commenced to live after the children were placed in foster homes. She did not obtain a divorce from her last husband, Paul Wilson, with whom she last lived in 1964, because she testified she had not had the money to file for divorce.[1] During June or July 1968,

---

[1] At the close of her testimony in this proceeding the court asked Mrs. Wilson as follows:

"THE COURT: Have you ever contacted any attorney or

(Continued on page 470)

appellant was interviewed by Mr. Morgan, then case-worker for the four children who had been placed in foster homes. The interview was relative to her pregnancy at that time and she was advised "that unless her circumstances changed, that is unless she were to move into a living situation conducive to the health and welfare of the new child that we would seek to acquire custody of that child as we had the previous children."[②] Her response was that she had no intention of changing her relationship with Jack Davis nor changing her circumstances as recommended.

Meanwhile, on July 2, 1968, Jack Davis pleaded guilty in the circuit court for Jackson County to the offense of larceny from the person. Imposition of sen-

---

the Legal Aid and asked them how much it would cost to secure a divorce from Mr. Wilson?

"THE WITNESS: No, I haven't."

[②] The court took judicial notice of the 1968 orders finding each of the four children within the jurisdiction of the court as dependent children, at which time they were placed in foster homes. In its opinion in reviewing the official files of those 1968 proceedings, the trial court found:

"* * * Of course the living conditions amount to more than just living immorally with Mr. Davis, they in fact included, as the allegations of the petition which was filed in 1968, alleged that she failed to provide the children with care, guidance and protection necessary for their physical, mental and emotional well being by reason of the following facts: That the children were were not provided adequate meals, they were left unsupervised during the day and night hours, on frequent occasions were on the streets endangering their physical safety because of this, and were living in extreme filth and unsanitary conditions, and at that time that she was living with an unrelated male, it doesn't mention that this was Mr. Davis. Judge Kelly at the hearing in March of 1968 found that all of these allegations of the petition were true. Appearing at that hearing were all of the children, the mother of the children and Mr. Davis who was listed in the order as a friend of Mrs. Bonnie Bell Wilson.

"* * * * *."

tence was postponed for three years on certain conditions, including that "he go to and reside with his sister, Mrs. Ida Reid, Wichita Falls, Texas." Appellant elected to accompany Mr. Davis to Texas where she remained during the next two years, giving birth to the child she carried when she left, and another one by Mr. Davis in October 1969. While in Texas appellant testified that she sent a letter to Mr. Morgan in care of the Jackson County Public Welfare Department and to Darilyn Shults, her oldest daughter (not one of the subjects of this proceeding). She said this letter was returned to her unclaimed. Mr. Morgan denied any contact with her during this period except the report solicited by the Jackson County Welfare Department received from the Wichita County Probation Department December 1, 1969, advising that appellant was indeed in Wichita Falls, Texas, living with Mr. Davis, and hoped to return to Oregon in one and one-half years when Mr. Davis's probation was terminated. The letter also stated that she hoped to have the return of her children when she returned. No attempted visitation or other contact with any of the children is claimed by appellant during this two-year period.

Appellant did return to Oregon in July 1970, and appeared at the Jackson County Welfare Department office where she asked for visitation with her children. Mr. Morgan, now supervisor, advised her that because of her continued absence over the past two years, proceedings had been commenced to terminate parental rights in the children. Appellant contested this action and it is the decree of the court in these cases terminating parental rights in the four children from which appellant appeals.

■ The state has the burden of proving, by a preponderance of competent evidence, facts sufficient to

terminate parental rights. ORS 419.525(2); *State v. Blum,* 1 Or App 409, 463 P2d 367 (1970).

In *Moody v. Voorhies,* 257 Or 105, 475 P2d 579 (1970), the Supreme Court said:

> "The public and the courts have become increasingly impatient with the seemingly irresponsible non-custodial parent who wishes to retain natural rights in his child, but is neglectful and irresponsible in exercising the parental role. A child ought to have an enforceable right to an acceptable family life even if it requires terminating parental rights. Be that as it may, courts are bound by the language of the statutes and cannot rearrange parent-child relationship except when the statutory criteria have been met. * * *"

The statute in the present case provides for termination as follows:

> "* * * * *
>
> "(2) The rights of the parent * * * may be terminated * * * if the court finds that the parent or parents:
>
> "* * * * *
>
> "(b) Have wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year. In determining whether the parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child, the court may disregard incidental visitations, communications and contributions." ORS 419.523.

The trial court found that both statutory criteria had been met, i.e., wilful desertion, and that the appellant had neglected without just and sufficient cause to provide proper care and maintenance for each of the minor children for more than one year.

Prior to 1963, ORS 419.523 had required abandonment by the parent before parental rights could be terminated. In 1963 the legislature made changes in the statute apparently with the intent to allow termination in situations which did not fall within the strict interpretation of the word "abandonment." *State ex rel Juv. Dept. v. Draper*, 7 Or App 497, 503-504, n 3, 491 P2d 215 (1971), Sup Ct *review denied* (1972).

Larsen, in *Trends and Developments in Oregon Family Law: Parental Rights and Child Welfare*, 43 Or L Rev 193 (1964), commented on the 1963 amendment as follows:

"In 1963 the Legislature also amended Or. Rev. Stat. sec. 419.523 (1963) to change one of the two grounds for permitting the juvenile court to terminate parental rights. It eliminated abandonment as a ground and substituted wilful desertion or neglect without just and sufficient cause to provide proper care and maintenance for the child for one year. This standard is identical with that stated in Or. Rev. Stat. sec. 109.324 (1963) as one of the grounds for dispensing with consent in an adoption proceeding. Since termination of parental rights by a juvenile court is often a preliminary step to adoption, such uniformity seems sensible.

"This amendment frees the juvenile court from the technical restrictions which have been judicially engrafted on the concept of abandonment, restrictions which have frequently allowed a parent to block the termination of parental rights for the best interests of the child just because he has maintained a few spasmodic and perfunctory contacts with the child. Anticipating the possibility that the court might apply similar restrictions to the new standard, the Legislature provided:

" 'In determining whether the parent has wilfully deserted or neglected without just and

sufficient cause to provide proper care and maintenance for the child, the court may disregard incidental visitations, communications and contributions.'

"This liberalization of one of the grounds for terminating parental rights will probably lead to an increase in the incidence of such termination orders, with correspondingly greater involvement by attorneys in the proceedings of the juvenile court." 43 Or L Rev at 207-08.

■ A review of the record discloses that appellant made an intentional voluntary choice to leave the state with her paramour and remain away without discernible thought of or consideration for her children in Oregon. We agree with the trial court that this conduct constituted the wilful desertion contemplated by the changed statute. With reference to the neglect without sufficient cause to provide proper care and maintenance for the minor children, it is not clear what she could have done for the children by way of support had she remained in Oregon. It seems certain, however, that she could have given *some* care and maintenance had she chosen to remain in Oregon. We conclude that the respondent in this case furnished adequate proof of neglect "without just and sufficient cause to provide proper care and maintenance" for the children. As we said in *State ex rel Juv. Dept. v. Draper,* supra, the statute requires proof "that the parent failed to perform parental duties for the required statutory period and that his neglect was voluntary * * * and intentional." 7 Or App at 505-506. Appellant's conduct falls within the statutory criteria.

The appellant contends that she does not now seek the custody of the children, only to prevent termination of parental rights. As we pointed out in *Blum*:

"It is important that the child have a sense of

belonging to a family. This is one of the things we look for after we say that our prime consideration is the best interests of the child. It is not in the best interests of the child to keep him forever in a limbo * * *. For this child it may well be that at his present age of seven and one-half years it is already too late to successfully integrate him into a family. If it is not too late, it is important to get it done soon."[8] 1 Or App at 416.

Affirmed.

---

[8] The ages here are 12, 9, 7 and 5.