507 P.2d 1161 (1973)
IN THE MATTER OF LINDA FLORINE MACK, Kimberly K. Mack, Carolyn Sue Mack and Dale Eugene Mack, Jr., Children.
STATE ex rel. Juvenile Department of Marion County, Respondent,
v.
Shirley Louise MACK and Dale Eugene Mack, Sr., Appellants.
Court of Appeals of Oregon.
Argued and Submitted March 1, 1973.
Decided March 26, 1973.
*1162 John D. Logan, Salem, argued the cause and filed the briefs for appellants.
John W. Jensen, Deputy Dist. Atty., Salem, argued the cause for respondent. On the brief was Gary D. Gortmaker, Dist. Atty., Salem.
Before SCHWAB, C.J., and LANGTRY and FOLEY, JJ.
FOLEY, Judge.
This is a proceeding to terminate parental rights in three children[1] under ORS 419.523(2), which provides as follows:
"The rights of the parent or parents may be terminated * * * if the court finds that the parent or parents:
"(a) Are unfit by reason of conduct or condition seriously detrimental to the child; or
"(b) Have wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year. In determining whether the parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child, the court may disregard incidental visitations, communications and contributions."
The petition for termination in this case alleged that the parents, Shirley Louise Mack and Dale Eugene Mack, Sr., were unfit under ORS 419.523(2)(a) and that they had wilfully neglected their children under ORS 419.523(2)(b) "[s]ince December 1969, and for more than one year prior to * * * June 8, 1971 * * *." No allegation of desertion was made. After a hearing pursuant to ORS 419.525, the juvenile court found that both of the alleged grounds for termination had been established and it therefore ordered the parents' rights terminated. The parents appeal.
In a proceeding to terminate parental rights the state has the burden of proving, by a preponderance of competent evidence, facts sufficient for termination. ORS 419.525(2); State ex rel. Juv. Dept. v. Wilson, 9 Or. App. 468, 497 P.2d 871 (1972). On appeal the parents contend that the state did not carry its burden as to either of the statutory grounds. For the reasons which follow, we agree, and we therefore reverse the order of the juvenile court.
The parents first assert that the state did not prove by a preponderance of the evidence that they "wilfully * * * neglected without just and sufficient cause" to provide care and maintenance for their children for one year. In State ex rel. Juv. Dept. v. Draper, 7 Or. App. 497, 505-506, 491 P.2d 215, 219 (1971), Sup.Ct. review denied (1972), we said that before parents' rights may be terminated pursuant to that statutory ground, proof is required
"* * * that the parent failed to perform parental duties * * * and that his neglect was voluntary [citations omitted] and intentional [citations omitted]."
A review of the cases decided by this court and the Supreme Court on the issue of what constitutes wilful neglect without just and sufficient cause shows that each case turns on its own facts. However, certain threads can be seen to run through the cases. In Draper we pointed out that the law does not require an impossible degree of support and that the parent must simply do "the best he can," consistent with his resources. Thus, in Draper, the fact that the father was shown to have had an average income well in excess of the poverty level, but contributed nothing to the support of his child, was important in our decision that the lower court was correct in ordering termination. But in Eacret v. Dews, Or. App., 95 Adv.Sh. 736, 500 P.2d 481, Sup.Ct. review denied (1972), and Cox v. Valdez, 9 Or. App. 323, 496 P.2d 32, Sup.Ct. review denied (1972), we recognized that failure to support, standing alone, is not sufficient to establish wilful neglect, and that adverse financial circumstances can excuse the failure.
*1163 Another factor which the decided cases have deemed to be significant is whether the parents have attempted to maintain contact with the children and have concerned themselves over their welfare. Thus, in Draper, wilful neglect was established in part by a showing that the parent in that case showed no apparent concern over whether his child was being cared for, and made no inquiry into the surroundings in which she was being reared. In Smith v. Green, 4 Or. App. 533, 480 P.2d 437 (1971), on the other hand, despite the fact that the parent had made no visits and contributed no support for five years, wilful neglect was held not to have been established because the parent knew the child's whereabouts and took some steps to assure its well-being. Similarly, in Drake v. Drake, 8 Or. App. 57, 491 P.2d 1203 (1971), Sup.Ct. review denied (1972), we contrasted the situation in that case with that in Draper by pointing out that the mother in Drake knew at all times where the child was and that she was receiving excellent care.
Finally, in determining whether the failure to support constitutes wilful neglect within the meaning of the statute, any prior notice that the parent might have had of the possibility of a termination proceeding is a relevant consideration. See Thies v. Barnes, Or. App., 95 Adv.Sh. 1473, 501 P.2d 1305 (1972).
Applying these criteria to the facts of the case at bar, we conclude that the parents herein have not wilfully neglected their children "* * * without just and sufficient cause * * *" within the meaning of the statute.
The record indicates that the Macks are severely limited in their earning capacities, that Shirley Mack has been hospitalized for large intervals of time, and that their income during the time period in question was extremely low. Although a proceeding was commenced by the Welfare Recovery Division in June 1970 to require the father, Dale E. Mack, to contribute to the support of the children, the court found on August 12, 1970, after several court appearances by the father, that "* * * said father's financial ability to provide support for said children has not improved, and * * * he has no present ability to provide support for said children * * *." Thus, there has been no showing of a failure to contribute to support where contribution was feasible. We cannot say that this is evidence of wilful neglect.
There is sharp conflict in the testimony regarding the Macks' attempts to visit the children. Mr. and Mrs. Mack testified that they had tried many times to arrange visits but that the social worker assigned to their case was usually unavailable and always uncooperative. This testimony was corroborated to some extent by the Macks' parents (the grandparents of the children). On the other hand, both the social worker assigned to the case and her supervisor testified that, to their knowledge, the Macks had made no attempts to arrange visits with the children. However, it is undisputed that the parents knew where their children were and that they were being properly cared for. It is also undisputed that the social worker assigned to the case put the onus of arranging for visits upon the parents, despite her knowledge that they were poor, ignorant and unresourceful. Finally, it is undisputed that, for the 17-month period preceding the filing of the termination petition the social worker never bothered to contact the Macks regarding their failure to request visits. If she had she could have learned that they had significant problems, including no phone and no automobile. Under these circumstances, taking note of the juvenile court's finding that no attempts to arrange visitation were made, it still seems clear as a matter of law that this was not wilful conduct such as to justify termination.
Finally, the record shows that the Macks were not aware of the possibility of a termination proceeding until they actually received notice of its initiation. To the extent that this is a relevant consideration, it cuts in favor of the Macks in this case since, once they had notice of the proceeding *1164 they mended their ways and adhered to a visitation schedule fixed by the court. This fact, coupled with the fact that the Macks have had the determination to contest the termination proceeding before the juvenile court and before this court,[2] supports our conclusion that their conduct, inadequate though it might have been, did not constitute "wilful neglect without just and sufficient cause."
Second, the parents assert that the juvenile court erred in finding them "unfit by reason of conduct and conditions[3] seriously detrimental to the children." We are bound by the recent Supreme Court decision of State v. McMaster, 259 Or. 291, 303-304, 486 P.2d 567, 572-573 (1971), in which the situation of the children and parents is comparable to this case.
It is beyond dispute that in rendering its decision the juvenile court felt that it was acting in the best interests of the children. However that criterion, determinative in questions of custody, is not completely determinative when the issue is that of termination of parental rights. Moody v. Voorhies, 257 Or. 105, 475 P.2d 579 (1970); Simons et ux. v. Smith, 229 Or. 277, 366 P.2d 875 (1961). As stated in Moody:
"* * * [C]ourts are bound by the language of the statutes and cannot rearrange parent-child relationship except when the statutory criteria have been met. * * *" 257 Or. at 111, 475 P.2d at 582.
Our decision on the issue of termination does not in any way affect the custody of the children in this case. We have decided only that the Macks' parental rights cannot be terminated at this time. The record contains indications that the Macks' lot is improving and that the time may come when they are capable of caring for their children.
Reversed.
LANGTRY, Judge (specially concurring).
I agree that State v. McMaster, 259 Or. 291, 486 P.2d 567 (1971), in which the factual situation bore some striking similarities to the facts of this case, seems to require the result in the court's opinion here. The opinion in McMaster stated that the welfare of the children is the primary consideration in cases such as this. See ORS 419.474; and State v. McMaster, supra, 259 Or. at 296, 486 P.2d 567. But it also stated that the court thought that the legislature had "* * * a more serious and uncommon detriment [to the child] than that caused by the conduct of parents such as the McMasters * * *" in mind when it set up the statutory criteria for termination of parental rights. If this assessment of legislative intent is incorrect, it is the legislature's prerogative to express its intent more clearly.
I do not agree with the reliance placed upon State v. Grady, 231 Or. 65, 371 P.2d 68 (1962),[1] wherein the majority assigns as one reason for our decision the interest of the parents in their children evidenced by the fact that they "* * * have had the determination to contest the termination proceeding * * *." The motivation for contesting the proceedings by parents whose shocking neglect of their children for several years has been as pronounced as that here is probably more attributable to their desire to assuage their feelings of guilt or improve their image in the eyes of the community than it is to true parental interest in the children.
NOTES
[1] The original proceeding involved four children. One of the children, Carolyn Sue Mack, is now deceased.
[2] See State v. Grady, 231 Or. 65, 371 P.2d 68 (1962).
[3] It appears that the juvenile court may have construed the statute to allow termination where the parents allow environmental "conditions" to exist which are seriously detrimental to the child. If so, such construction was erroneous. In State v. Blum, 1 Or. App. 409, 463 P.2d 367 (1970), we pointed out that the statute refers to a "condition" of the parent or parents (in that case, mental illness).
[1] We have pointed out other criticism of the Grady opinion in State ex rel. Juv. Dept. v. Archuletta, Or. App., 96 Adv.Sh. 974, 506 P.2d 540 (1973), and State v. Blum, 1 Or. App. 409, 414, n. 2, 463 P.2d 367 (1970).