Argued February 7, reversed and remanded April 1, 1975

IN THE MATTER OF CHRISTOPHER AND DAMON MARTIN,
MINOR CHILDREN

STATE EX REL JUVENILE DEPARTMENT OF
CLATSOP COUNTY ET AL, *Respondent, v.*
MARTIN, *Petitioner.*

533 P2d 780

*Hayes P. Lavis,* Astoria, argued the cause for petitioner. On the briefs were Bradley C. Grove and Anderson, Fulton, Lavis & Van Thiel, Astoria.

*William T. Park,* Deputy District Attorney, Astoria, argued the cause for respondent. With him on the brief was Frank J. Coumont, District Attorney, Astoria.

TONGUE, J.

This is a proceeding to terminate parental rights. Defendant appealed to the Court of Appeals from an order terminating his parental rights in his two children, aged three and seven. The Court of Appeals af-

firmed that order. 19 Or App 28, 526 P2d 647 (1974). We granted defendant's petition for review because of our concern over the proper disposition of two questions: (1) Whether the psychiatrist-patient privilege may be asserted by defendant in proceedings to terminate parental rights; and (2) Whether the trial court could take judicial notice of the petitioner's prior commitments to the Oregon State Hospital or base its decision in part on personal knowledge previously acquired about petitioner's family history and background.

■■ The Court of Appeals held that the psychiatrist-patient privilege may be asserted by a defendant in a proceeding to terminate parental rights. Although that question is not without difficulty, after a review of the authorities we find that we are in at least general agreement with the decision by the Court of Appeals and in its careful and thorough analysis of the difficult problems which must be considered in any proper decision of that question. For that reason, we believe that further discussion of that question by this court at this time would serve no useful purpose, except for the following comments: (1) Although a proceeding to terminate parental rights under ORS 419.525 may be sui generis for some purposes, as held by the Court of Appeals, we believe that for purposes of evidence it is essentially a "civil proceeding," so as to be subject to the provisions for physician-patient privilege, as set forth in ORS 44.040(1)(d),① and (2) We find

---

① ORS 44.040(1) provides that:

"Subject to ORS 44.610 to 44.640, a regular physician or surgeon shall not, without the consent of his patient, be examined in *a civil action, suit or proceeding*, as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient." (Emphasis added)

that most of the recent authorities, including some of those which are critical of the physician-patient privilege, support the need for a privilege in communications between a psychotherapist and his patient, as involved in this case,[2] and regardless of whether the psychotherapist is privately employed or is employed by the state.[3]

In this case, however, the Court of Appeals also held that "there was 'competent' evidence untainted by the improper admission of the privileged testimony sufficient to sustain termination * * *"

ORS 419.525(2) provides that the standard of proof in a proceeding to terminate parental rights shall be a "preponderance of competent evidence.

ORS 419.474(1) provides that a juvenile court "exercises jurisdiction as a court of general and equitable jurisdiction."

ORS 419.561(4) provides that appeals from the juvenile court "shall be conducted in the same manner as an appeal in an equity suit."

In State v. McMaster, 259 Or 291, 295-96, 486 P2d 567 (1971), we held that a proceeding to terminate parental rights is neither a criminal proceeding nor a "regulatory proceeding."

[2] See New Uniform Rules of Evidence, Rule 503 (adopted 1974); Proposed Federal Rules of Evidence, Rule 504 (1971); Model Code of Evidence, Rule 230 (1942); Slovenko, Psychiatry and a Second Look at the Medical Privilege, 6 Wayne L Rev 175, 184, 199 (1960); Louisell, The Psychologist in Today's Legal World: Part II, 41 Minn L Rev 731, 750 (1957); Rappeport, Psychiatrist-Patient Privilege, 23 Md L Rev 39, 41 (1963); Note: Confidential Communications to a Psychotherapist: A New Testimonial Privilege, 47 NWU L Rev 384 (1952); and Guttmacher & Weihofen, Psychiatry and the Law 270 (1952). See also DeWitt, Privileged Communications Between Physician and Patient 87 (1958).

[3] State v. Fontana, 277 Minn 286, 152 NW2d 503, 505 (1967); State v. Shaw, 106 Ariz 103, 471 P2d 715, 718 (1970); and State v. Sullivan, 60 Wash 2d 214, 373 P2d 474, 480 (1962).

This result is also consistent with the provisions of ORS 179.505, providing that records of patients of any Mental Health Division facility shall not be subject to inspection without the written consent of the patient, with some exceptions (including

consisting of the trial court's "judicial knowledge of Mr. Martin's prior commitments" together with "additional unprivileged testimony which provides supplementary facts adequate to justify termination of parental rights."

■ It appears from the record that prior to this termination proceeding there had been three commitment proceedings involving the defendant. The same trial judge entered the commitment order in one of those proceedings.

In the course of this proceeding the trial judge announced that he had reviewed the files in all three of those commitment proceedings; that he intended to take judicial notice of the contents of those files; and that he also had "been neighbors to these people" and had known defendant's mother, who "suffers * * * from the same precise condition."

It is well established in Oregon that a court cannot properly take judicial notice of files in a different case than the case before it. *Hood v. Hatfield,* 235 Or 38, 44, 383 P2d 1021 (1963).

It is equally clear that a judge may not properly take judicial notice of personal information possessed by him. *Laurance v. Laurance,* 198 Or 630, 637-38, 258 P2d 784 (1953).

■ We have reviewed the record in this proceeding and find no "additional unprivileged testimony" suf-

---

testimony by the patient "regarding an issue to which the written account would be relevant"), and that:

"(5) No written account referred to in subsection (1) of this section may be used to initiate or substantiate any criminal, civil, administrative, legislative or other proceedings conducted by federal, state or local authorities against a patient or to conduct any investigations of a patient."

ficient to justify termination of defendant's parental rights. We have previously held that the "permanent termination of parental rights is one of the most drastic actions the state can take against its inhabitants." *State v. Jamison,* 251 Or 114, 117, 444 P2d 15, 444 P2d 1005 (1968).

Again, it would serve no useful purpose to review that evidence. Suffice to say that defendant's schizophrenia was of such a type that during periods of "remission" he was a good parent. It also appears from the record that in the event that defendant continued to take medication regularly and to report regularly to a mental health clinic or psychiatrist there was at least a possibility that he would be able to properly discharge his responsibilities as a parent in the future. The principal conflict in the testimony was whether defendant would in fact do so in the future, in view of his failure to do so in the past.

At the trial of this case, on February 11, 1974, defendant swore that he could and would do so and asked for an additional six months to demonstrate both his good faith and his ability to do so. The testimony was uncontradicted that he loved both children and there was no evidence that he had ever abused them. His wife had previously left him and he had been awarded their custody by the terms of a divorce decree. Both children are now in foster homes where they are receiving good care, at least for temporary purposes.

In the absence of the testimony of the psychiatrists and the contents of the files of the three previous commitment proceedings, we hold that the remaining evidence offered at the trial was insufficient to support the order terminating defendant's parental rights. Accordingly the decisions of both the Court of Appeals

and the trial court are reversed and this case is to be remanded by the Court of Appeals to the trial court for a new trial.

HOWELL, J., specially concurring.

I concur in the majority opinion, but I am seriously disturbed that our juvenile courts are not allowed the benefit of expert psychiatric evidence in custody or termination of parental rights cases because of the physician-patient privilege.

The law is well established that in cases involving the custody of minor children and termination of parental rights, the primary concern of the court and the state is the welfare of the children.

As the Court of Appeals points out, the legislature has provided that juvenile courts should consider when deciding whether parental rights should be terminated:

"(a) Emotional illness, mental illness or mental deficiency of the parent of such duration as to render it impossible to care for the child for extended periods of time.

"(b) Conduct toward any child of an abusive, cruel or sexual nature." ORS 419.523(2).

Where, as in this case, one of the parents has suffered an emotional illness to the extent of commitment, the juvenile court is and certainly should be concerned whether that illness would or would not have a serious effect on the minor children. Unfortunate as it may be, it is a fact that in some cases the parent's illness could result in a dangerous situation for the child. The best way for the juvenile court to determine the welfare and safety of the children under such circumstances is to have the benefit of expert psychiatric evi-

dence from those who have examined the parent.[1] To retain the privilege is to place upon the juvenile judge the tremendous responsibility of deciding the welfare and possibly even the safety of the children without knowledge of the most important facts.

I appreciate the argument that the psychiatrist-patient privilege is necessary in order to acquire full disclosure of all the patient's problems and to provide for effective treatment of the patient. The consideration thus becomes a balancing of the policy behind the privilege and the importance of the evidence to the trial court charged with deciding the welfare of the children. As the Court of Appeals stated, the problem is one which should be considered by the legislature.[2]

HOLMAN, J., joins in this opinion.

---

[1] There is no statutory authority for the juvenile court to appoint psychiatrists or psychologists to examine parents.

[2] The legislature has seen fit to create an exception to the physician-patient relationship by requiring the physician to report to the police his knowledge of the facts in child abuse cases. ORS 418.740 et seq. If such action is required after the fact, it is arguable that elimination of the privilege might allow the juvenile court the opportunity to prevent such tragic incidents.