Argued and submitted January 8, decision of Court of Appeals reversed and judgment of the circuit court affirmed October 22, reconsideration denied November 24, 1992

In the Matter of
Terance Robert Beasley, a Child.

STATE ex rel JUVENILE DEPARTMENT
OF TILLAMOOK COUNTY,
*Petitioner on Review,*

*v.*

Raymon BEASLEY,
*Respondent on Review.*

(CC J-1650; CA A64963; SC S38281)

840 P2d 78

Harrison Latto, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Theresa M. Kohlhoff, Wilsonville, argued the cause for respondent on review.

Before Carson, Chief Justice, and Peterson, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

UNIS, J.

Fadeley, J., specially concurred and filed an opinion.

## UNIS, J.

The broad question presented in this case is whether a trial court, in a proceeding to terminate parental rights under ORS 419.525,[1] may quash a subpoena[2] that requires the attendance of a minor child to testify as a witness on behalf of the parent whose parental rights to the child are sought to be terminated, and may refuse to allow that child, whose testimonial competence is not challenged, to give relevant testimony, on the ground that to allow the production and testimony of the child would be "contrary to the child's best interest."

This is an appeal from a termination of parental rights proceeding. The Tillamook County Juvenile Department initiated a petition to terminate the parental rights of father to his son.[3] The parties — the state, the father, and the

___

[1] ORS 419.525(1) and (2) deal with service of summons and appointment of counsel, respectively. ORS 419.525(3) and (4) set out the procedure and implications of a termination proceeding:

"(3) * * * The facts on the basis of which the rights of the parents are terminated, unless admitted, must be established by clear and convincing evidence * * *.

"(4) Unless there is an appeal from the order terminating the rights of the parent or parents, the order permanently terminates all rights of the parent or parents whose rights are terminated and the parent or parents have no standing to appear as such in any legal proceeding concerning the child."

[2] There is no contention in this proceeding that the subpoena was either invalid or improperly served.

[3] The "Petition for the Termination of Parental Rights" stated in part:

"6.

"The parental rights of [father] to the * * * child should be terminated on the grounds that the father is unfit by reason of conduct or conditions seriously detrimental to the child and integration of the child into his home is improbable in the foreseeable future due to conduct or conditions not likely to change, including, but not limited, to the following:

"(a) Addictive, chronic or habitual use of intoxicating liquors or controlled substances.

"(b) There has been a lack of effort or failure to obtain and maintain a suitable or stable living situation for the child so that return of the child to the parent is possible.

"(c) The father has failed to follow through with drug and alcohol treatment programs in the community.

"(d) The father has failed to present a viable plan for the return of the child to his care and custody.

"(e) Physical and emotional neglect of the child.

child — were each represented by a lawyer.[4] At the time of trial, January 30, 1990, the child, who was six and one-half years of age, was in foster care under the supervision of Children's Services Division (CSD). Before trial, father moved the court to order CSD to allow him to interview the child. The court denied the motion. Father then served a subpoena on CSD to produce the child at trial to testify as a witness. Father moved to examine the child pursuant to the subpoena, stating that the child's testimony would rebut much of the state's evidence.[5] In support of his motion, father included an affidavit of his lawyer, which stated that the lawyer believed that the child's testimony was "vital and crucial to the father's case." Father's lawyer advised the trial court that father was willing to have the child's testimony taken in the trial court's chambers by the trial court and the parties' lawyers without father's presence.

In opposing father's motion, the state filed an affidavit of the CSD caseworker with responsibility for the child. The affidavit stated that "requiring [the child] to testify would be harmful to him and detrimental to his best interests." A letter written by a psychologist and a psychology

---

"(f)  Lack of effort by the father to adjust his circumstances, conduct or conditions to make return of the child possible or failure to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected.

"7.

"The child has been in foster care since September 9, 1987, and has been dependent on other people for the care, attention, and love which * * * [father has] failed to provide and [has] failed to exhibit an ability or intent to provide, and it is in the child's best interest to be freed for adoption and be provided with the security of a permanent home."

[4] In a proceeding to terminate parental rights, "[t]hree parties are involved: the state, the parents and the child." *State v. McMaster*, 259 Or 291, 296, 486 P2d 567 (1971).

[5] In the motion, father stated that the child's testimony would (1) rebut the state's evidence that the child "has substantially forgotten about his father" and had no desire to see or hear about his father; (2) rebut the state's evidence that returning the child to father's custody would be detrimental to him; (3) rebut the state's evidence that the child has developed a bond with his maternal grandmother, with whom the child was living; (4) show that father was not responsible for the child's unusual sexual behavior; (5) determine whether the child's mother had been seeing him; and (6) give the court and all parties an opportunity to observe "and thus obtain a clearer understanding of the child."

intern, attached to the CSD caseworker's affidavit, stated that in their opinion there would be substantial risk of harm to the child if he were compelled to testify and that the child's answers would not likely be accurate because of his impressionability and desire to please.[6]

The trial court denied father's motion, quashed the subpoena, and ordered that CSD need not produce the child as a witness. The trial court concluded that, although the child's testimony had some relevance to the allegations in the petition, that relevance was outweighed by the risk of harm to the child. The trial court concluded, therefore, that it would be contrary to the child's best interests to compel his production and testimony.[7] Following trial, the trial court terminated father's parental rights to the child.

Father appealed, assigning as error, *inter alia*, the trial court's refusal to allow him to subpoena the child and permit him to call the child as a witness on his behalf. The

---

[6] The letter was written at the request of CSD for the purpose of making a recommendation regarding the child's proposed testimony at father's termination hearing. The authors made their recommendation on the basis of a recent psychological examination by the child's therapist, the child's emotional and behavioral history, and the child's developmental considerations. The letter stated in part:

"[The child] is a young boy who has a history of demonstrating exceptionally strong anxiety responses, including but not limited to, self-destructive behaviors, bed-wetting, and hoarding of dangerous items. While he is showing improvements in these areas, it is very likely that he will regress to these earlier behaviors under stressful circumstances. It is felt that in addition to the general stressful nature of courtroom testimony, which would be experienced by any child, it would be particularly anxiety provoking for [the child] due to the following: it will again raise issues regarding the instability of his caretaking situation; he will need to be in contact with his father whom he has not seen since visitation was terminated; and he will be placed in a situation of perceiving himself as hurting or antagonizing his father.

"* * * * *

"Due to these considerations, it is advised that [the child] not be required to testify."

[7] The trial court order states:

"Having reviewed the allegations of the petition and heard the arguments of counsel and based on the record herein, * * * and considering [father's] proposed questions to be asked of the child and the age of the child, both now and at the time he lived with his father; and after weighing the relevancy and importance of the testimony sought to be elicited by defense counsel against the risk of harm to the child,

"The court hereby finds and concludes that it is contrary to the child's best interest to compel his production and testimony * * *."

Court of Appeals, with one judge dissenting, reversed and remanded, stating:

> "When a parent's own conduct is on trial and that parent faces one of the most drastic actions a state can impose, the permanent loss of a child, the parent must have the opportunity to rebut the state's case to the extent that the evidentiary rules and statutes allow. *See* OEC 402. No statute authorizes the court in a termination case to refuse to examine a child because it is not in the child's best interests. * * * Assuming that the child was competent, the court was required to allow him to be examined in chambers." *State ex rel Juv. Dept. v. Beasley,* 106 Or App 515, 519, 809 P2d 117 (1991) (footnote omitted).

We allowed the state's petition for review. We reverse the decision of the Court of Appeals and affirm the judgment of the circuit court.

■ As a threshold matter, we observe that the Oregon Evidence Code applies to a proceeding to terminate parental rights. *State ex rel Juv. Dept. v. Ashley,* 312 Or 169, 173, 818 P2d 1270 (1991).[8] In the Oregon Evidence Code, the legislature adopted a thematically consistent, overall approach to the way evidence should be treated in those actions, suits and proceedings in which it applies. OEC 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Oregon Evidence Code, by the Constitutions of the United States and Oregon, or by Oregon statutory and decisional law. Evidence which is not relevant is not admissible."

■ It is clear from a reading of OEC 402 that the Oregon Evidence Code was neither intended to be nor is a complete codification of all the rules of evidence.[9] OEC 402 impliedly

---

[8] "The Oregon Evidence Code applies generally to civil actions, suits and proceedings." OEC 101(2). In *State ex rel Juv. Dept. v. Martin,* 271 Or 603, 605, 533 P2d 780 (1975), a pre-OEC case, this court stated that "[a]lthough a proceeding to terminate parental rights * * * may be sui generis for some purposes, * * * we believe that for purposes of evidence it is essentially a 'civil proceeding,' so as to be subject to the provisions for physician-patient privilege, as set forth in [*former*] ORS 44.040(1)(d) * * *."

[9] The Commentary to OEC 101(2) states:

"While the Oregon Evidence Code applies to all proceedings, it is not a compendium of all the rules of evidence that apply to proceedings. A number of evidential issues are not addressed, and many others are treated in general fashion. These are left for judicial lawmaking." Legislative Commentary to Oregon Rules of Evidence (1981).

recognizes that decisional evidentiary rules, in areas not covered by the Code, survive the adoption of the Code.[10] Thus, proffered evidence may be subject to exclusion under one of the exceptions to the admissibility of relevant evidence in OEC 402 (*e.g.*, decisional law). If the evidence is not barred by OEC 402, it may, nevertheless, be excluded by the trial court under OEC 403. OEC 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

In this case, there is no dispute that the child's testimony is relevant.[11] Because the child's testimony is relevant, we must first decide whether the child's testimony is subject to exclusion under OEC 402. In addressing that inquiry, it is important to note what is not involved and what we do not, therefore, decide in this case. There is no claim that the child's testimony is inadmissible under the "constitutions of the United States and Oregon, or by Oregon statutory law." There is no contention that the child is incompetent.[12] Nor is there any contention that the stress or trauma to the child that the trial court found would result from requiring him to appear and testify would prevent him from satisfying one or more of the elements of competency (*e.g.*, make the child unable to communicate).

The state argues that, under the decisional law of *Chandler v. State*, 230 Or 452, 370 P2d 626 (1962), it was proper for the trial court to quash the subpoena and refuse to allow father's child to testify on his behalf because the court found that it was not in the "child's best interest to compel his production and testimony." In *Chandler*, a father petitioned to revoke an order making his 13-year-old daughter a ward of

---

[10] One writer states that the "qualification [that evidence may be excluded by decisional law] was presumably deemed necessary in order to continue certain rules of exclusion outside the evidence code that are recognized by prior case law." Kirkpatrick, Oregon Evidence 122 (2d ed 1989).

[11] Under OEC 401, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[12] *See State v. Milbradt*, 305 Or 621, 624, 756 P2d 620 (1988), for a discussion of the essential elements of testimonial competency.

the juvenile court. At the hearing, the trial court denied the father's request to examine his daughter as a witness in open court. The child was questioned privately by the court in the presence of counsel for the father and the state. A record was made of the questions and answers. This court upheld that procedure, stating that permitting such testimony is discretionary with the trial court and that the trial court did not abuse its discretion. This court distinguished between a divorce or custody proceeding and a juvenile court proceeding, stating that the compelling intent of the latter is to protect the child and that the trial court must be given discretion to provide such protection when necessary. This court stated:

> "[T]he concept and intent of the juvenile code would be violated if [a rule providing that if children are competent to testify, either party can require them to testify] were to be applied to the proceedings contemplated by the code. *The compelling intent of the juvenile code proceeding is to protect the child in any situation in which the court thinks the child may require it. Discretion must be vested in the trial court to make the initial determination if it would be proper to question a child [in open court] in any given case.*" *Id.* at 456 (emphasis added).

The quoted language from *Chandler* should not be taken to mean that all proceedings that arise from statutes codified in the juvenile code focus initially or exclusively on the best interests of the child.[13] A proceeding to terminate parental rights, which arises from a statute, ORS 419.525, and is codified in the juvenile code, does not focus *initially* on the best interests of the child. The statute for termination of parental rights contemplates a two-stage analysis. The first stage focuses on the conduct of a parent, *i.e.*, the alleged statutory grounds for termination. The second stage focuses on whether the best interests of the child will be served by

---

[13] Shortly before *Chandler v. State*, 230 Or 452, 370 P2d 626 (1962), was decided, this court stated:

> "The best-interests-of-the-child standard has no similar relation to the issues presented in a proceeding to dispense with consent for an adoption. In an adoption, a court is asked to terminate every right and interest of the natural parent. Adoption goes far beyond the child-centered question of custody during minority." *Simons et ux v. Smith*, 229 Or 277, 281, 366 P2d 875 (1961).

Thus, this court determined that the termination decision, at least in the context of an adoption, is separate from the question of the best interests of the child.

termination. In a termination proceeding, if a parent's conduct justifies termination, then the best interests of the child are considered explicitly, and could even then prevent termination from occurring.[14] As this court stated in *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 189, 796 P2d 1193 (1990):

> "In a termination case, * * * the issue is not whether a parent should be 'punished' by a termination of his or her parental rights; rather, the issue is whether the statutory grounds for termination have been established by clear and convincing evidence, ORS 419.525(3), and, if so, whether the child's best interest will be served by termination of the parent-child relationship. ORS 419.523(1)."

A footnote to this text states: "*Even if* a court determines that a child's best interest will be served by a termination of parental rights, it may not be ordered unless the statutory grounds for termination have been established by clear and convincing evidence." *Id.* at 189 n 15 (emphasis in original).[15]

In *Kreutzer v. Kreutzer*, 226 Or 158, 359 P2d 536 (1961), a proceeding for modification of a divorce decree, this court held that, in view of the express provisions in *former* ORS 44.020 and *former* ORS 44.030, the statutes that then delineated persons who were competent to testify as witnesses, the trial court could not refuse to permit minor children to testify if they are qualified under those former statutory provisions. The court stated:

> "Consequently, the right of the defendant to call the children to the stand and to elicit testimony from them material to the issues was precisely the same as it would have been in the case of any other competent witness. This is, of course, a fundamental right. *Lakson v. Lakson*, 124 Or 219,

---

[14] Thus, the best interests of the child could prevent termination where the grounds for termination are established, but cannot cause termination where the grounds for termination are not established.

[15] This court has recently held that an adoption proceeding in which the natural parent does not consent, so that a substitute for consent similar to the grounds for termination must be established, also divides into two stages:

"The first stage determines whether the natural parent's rights may be terminated. The second stage is an independent determination as to whether it is in the best interests of the child to approve the adoption. *Zockert v. Fanning*, [310 Or 514, 518-19, 800 P2d 773 (1990)]; *State ex rel Juv. Dept. v. Geist*, [310 Or 176, 189, 796 P2d 1193 (1990)]; *Moody v. Voorhies*, [257 Or 105, 109-10, 475 P2d 579 (1970)]; *Simons et ux v. Smith*, [229 Or 277, 280-85, 366 P2d 875 (1961)]." *Eder v. West*, 312 Or 244, 261, 821 P2d 400 (1991).

263 P 891 [1928]. In divorce cases, it seems to be uniformly held that the court has no authority to exclude the testimony of children of the parties of tender years if they are otherwise competent witnesses. 17 Am Jur 567, § 455, anno. 2 ALR2d 1330. There is no reason for a different rule in a proceeding for modification of a provision in a divorce decree granting the custody of children, for the parties to such a controversy have the same right to present evidence in open court as in any other case. *Rea v. Rea*, 195 Or 252, 277, 245 P2d 884 [1952]." 226 Or at 161.

It is true that, under the holding in *Kreutzer*, a trial court may not refuse to permit minor children to testify simply because they are children if they possess the requisite testimonial qualifications. Nevertheless, the *Kreutzer* rule would not prevent a trial court from excluding relevant testimony of the child under an exclusionary rule set forth in the Oregon Evidence Code, such as OEC 402 or OEC 403. Although *Chandler v. State, supra*, did not involve a termination of parental rights proceeding, we conclude that the rule that it announced and the procedure followed by the trial court in that case should be applied in a termination proceeding.[16]

■ The "child's best interest" rule of *Chandler* involves a balancing of interests, as does OEC 403.[17] Although the risk of severe emotional or psychological harm that would result to a child is not one of the dangers or considerations set forth

---

[16] A proceeding to terminate parental rights is under the juvenile code, as was the proceeding involved in *Chandler*.

[17] The existence of the countervailing factors set forth in OEC 403 is a preliminary question of fact under OEC 104(1). *See* Wright & Graham, 22 Federal Practice and Procedure: Evidence 320, § 5224 (stating same principle as to FRE 403, the federal counterpart to OEC 403). OEC 104(1) reads:

"Preliminary questions concerning * * * the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (2) of this section. In making its determination, the court is not bound by the rules of evidence except those with respect to privileges."

In an OEC 104(1) hearing, the trial court may consider, for example, testimony, affidavits of mental health experts, medical records, or the informed word of counsel. *See State v. Pinnell*, 311 Or 98, 114-15, 806 P2d 110 (1991) (stating rule with respect to determination of unavailability of a witness due to physical or mental illness or infirmity). Under OEC 403, the trial court, in determining the admissibility of evidence that is relevant under OEC 401, and not barred by OEC 402, balances the costs of the evidence against its benefits.

in OEC 403,[18] *Chandler*, as a decisional law exception under OEC 402, is a basis independent of OEC 403 for inadmissibility of a child's testimony in a termination proceeding. The rule set forth in *Chandler* and the procedure followed by the trial court in that case are consistent with the analytical approach set forth in OEC 403 to determine the admissibility of a child's testimony in a termination proceeding. Similar to the balancing in OEC 403, under the *Chandler* rule, the child's testimony cannot be excluded unless the probative value of the child's testimony is substantially outweighed by the risk of severe emotional or psychological harm to the child. If, for example, the child's testimony has minimal probative value, but is substantially outweighed by the risk of severe emotional or psychological harm to the child, the trial court may exclude the child's testimony. Balancing the probative value of the child's testimony against the risk of severe emotional or psychological harm to the child under the *Chandler* rule, like the balancing under OEC 403, commonly will involve examination of the child in chambers where requested.[19]

██ Before a trial court may refuse to allow a child whose testimonial competence is not challenged to give relevant testimony that is not otherwise excluded, in order to protect the "child's best interests," the trial court must perform the balancing required by *Chandler, i.e.*, the trial court must determine whether (1) the probative value of the child's testimony is (2) substantially outweighed by the risk of severe emotional or psychological harm to the child from testifying. In making the determination regarding the risk of severe emotional or psychological harm to the child, the trial court should consider such factors as: (1) the probability of severe emotional or psychological injury to the child as a result of

---

[18] OEC 403 is not specifically directed at the impact of the factfinding process on a proffered witness. Rather, OEC 403 addresses the improper impact of the proffered evidence on the factfinding process.

[19] We recognize the importance of protecting the emotional and psychological well-being of the child, which is why risk of severe emotional or psychological harm to the child from testifying is an appropriate factor under the balancing required by *Chandler*. There may be instances when examination of the child in the trial court's chambers may not be necessary. One instance in which examination of the child would not be necessary is if the parties agree on what the child would say and request that the trial court make its determination under the *Chandler* rule based on that offer.

testifying; (2) the degree of anticipated injury; (3) the expected duration of injury; and (4) whether the expected psychological injury is substantially greater than the reaction of an average child who testifies. Unless the probative value of the child's testimony is substantially outweighed by the risk of severe emotional or psychological harm to the child from testifying, there is no discretion to exclude the child's testimony; the child's testimony must be admitted. If, however, the balance goes against probative worth, the trial court may exclude the evidence.[20] We realize that, in practice, these factors are extremely difficult to quantify. The opinions of mental health experts usually will be necessary in order for the court to make its assessment of the asserted emotional and psychological injury that would result to the child. We encourage the trial court to articulate on the record the reasons for its ruling.

■     The trial court here did not have the benefit of this opinion to guide it in performing its balancing task under the decisional law of *Chandler*, as clarified here. However, we need not remand this case to the trial court to perform that task in accordance with the approach outlined in this case. Although father never agreed that the child need not testify, father did submit a written offer of what the child would testify to, and in the hearing on the motion to quash the subpoena, father summarized what the child's testimony would be and its importance to the case. *See supra*, note 5. We accept father's summary of facts as having been established for purposes of our *de novo* review and hold that, in light of

---

[20] In *State v. Pinnell, supra*, 311 Or at 112-13, we quoted from Wright & Graham, *supra*, at 263-64, § 5214, that OEC 403, like its federal counterpart, FRE 403:

"requires the trial judge to go through a conscious process of balancing the costs of the evidence against its benefits. Unless the judge concludes that the probative worth of the evidence is 'substantially outweighed' by one or more of the countervailing factors, there is no discretion to exclude; the evidence must be admitted. If, on the other hand, the balance goes against probative worth, the judge is not required to exclude the evidence but he 'may' [in the words of OEC 403] do so. In other words, the process of balancing is a prerequisite to the exercise of discretion, but it is not a formula for its exercise; the rule presupposes a two-step process — balancing, then the discretionary judgment. Obviously the factors in the balancing test are to be taken into account in the exercise of discretion, but they do not purport to control it. Discretion is an intuitive process not susceptible to the quantification presupposed by the metaphor of the scales."

That same principle applies, in essence, as to the balancing under the *Chandler* rule.

the record as a whole in this case, the state has established by clear and convincing evidence that father's parental rights should be terminated.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

**FADELEY, J.,** specially concurring.

I concur in the result in this case. That is, I agree with the statement that even accepting "father's summary of facts [as to what the proposed witness would testify] as having been established for purposes of our *de novo* review * * * in light of the record as a whole in this case, the state has established by clear and convincing evidence that father's parental rights should be terminated." 314 Or at 455.

That being true, there is no need to deal with the admissibility of the proposed testimonial evidence merely because the parties continue to contest its exclusion. Whether or not the evidence is admissible will have no practical effect on the outcome of the case. Because the ruling on the evidence does not affect the outcome, we need not (and in my view should not) decide whether the ruling was correct. The court's consideration of the excludability of the evidence, thus, is *dictum*. It is *dictum* that I do not wish to join.

No claim is made that refusing to hear the testimony of a competent witness improves the truth-seeking function of the court. Given that both parent and child have a liberty interest in continuation of their association, *see Zockert v. Fanning*, 310 Or 514, 519, 800 P2d 773 (1990), citing *Lassiter v. Department of Social Services*, 452 US 18, 27, 101 S Ct 2153, 68 L Ed 2d 640 (1981) ("parent's interest in the accuracy and justice of the decision to terminate * * * parental status is * * * a commanding one"), excluding relevant evidence of a competent witness should not be entered into lightly.[1]

No one suggests that the testimony would so influence the judge emotionally that the judge might not enter a finding of fact on the merits notwithstanding the emotional

---

[1] *See Schall v. Martin*, 467 US 253, 263, 104 S Ct 2403, 2409, 81 L Ed 2d 207 (1984) ("no doubt that the Due Process Clause is applicable in juvenile proceedings").

charge carried by the testimony. Thus, OEC 403 ("probative value is substantially outweighed by the danger of unfair prejudice") is not involved in rationalizing the court's *dictum,* nor should it be. Imwinkelried, *The Meaning of Probative Value and Prejudice in Federal Rule of Evidence 403: Can Rule 403 Be used to Resurrect the Common Law of Evidence?,* 41 Vand L Rev 879 (1988).

OEC 402 is referred to by the *dicta.* This rule provides:

"All relevant evidence is admissible, except as otherwise provided by the Oregon Evidence Code, by the Constitutions of the United States and Oregon or by Oregon statutory and decisional law. Evidence which is not relevant is not admissible."[2]

Obviously, the Oregon rule intends to preserve decisional law evidence rules. Passing over the issue whether the reference is to decisions and cases that may arise in the future, after adoption of the rules or, instead, is a retroactive incorporation of all prior cases announcing exclusionary rules of evidence, the *dicta* in the lead opinion in the present case refers to a 1962 decision of this court where the issue was simply whether a 13-year-old child was within the jurisdiction of the juvenile court after having run away from home. *Chandler v. State,* 230 Or 452, 458, 370 P2d 626 (1962).

This court remanded that case for an additional hearing on the ground that the parent should have been permitted to inspect the files of the public agency having custody of the 13-year-old child under court order. On the way to that holding, the court stated that the trial judge did not abuse discretion "in refusing to permit the child to be called as a witness and to have been examined in open court." *Id.* at 456. However, the court only rules after pointing out that, in that case:

"The child was questioned privately by the court in the presence of counsel for the father and for the state. A record of the questions and answers is here." *Id.*

---

[2] Oregon did not adopt the same provisions as in the federal rules. Federal Rule of Evidence 402 provides:

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. * * *"

In *Chandler*, this court comments that the juvenile court is vested with discretion to make an initial determination whether it would be proper to question the child in any given case. The comment was itself *dictum*. The court said that the compelling intent of the juvenile code proceeding is to protect the child in any situation in which the court thinks the child may require it, but did not discuss this reasoning further.[3] That statement is *dictum* because that rationale and statement about discretion were not employed in that case, in that the child was questioned on the record albeit outside of open court. Thus, the *dicta* in the present case is based on the *dictum* in the pre-OEC *Chandler* case.

The opinion of the court also passes by the question whether the judiciary is bound by statutory rules of evidence or only required to apply them until the judiciary develops a contrary common law rule. That question arises because, in a different setting, namely, child sexual abuse cases, the legislature has adopted a rule that is different than the rule articulated by the lead opinion in the present case, although the statutory protection of the child has some of the same features as are in the lead opinion's new rule. The somewhat similar statutory rule is clearly limited to the class of cases for which it was enacted.[4] In child sexual abuse cases, OEC 803(18a)(b) permits hearsay testimony of statements by a child victim of sexual abuse. The rule allows the hearsay when the child witness "is substantially likely * * * to suffer lasting severe emotional trauma from testifying" and provides that "[u]nless otherwise agreed by the parties, the court shall examine the child in chambers and on the record." The

---

[3] The decision predates application of some adult constitutional rights to protect the child in juvenile court. *E.g., In re Gault*, 387 US 1, 87 S Ct 1428, 18 L Ed 2d 527 (1967).

[4] This is not a child sexual abuse case, but rather one involving parental neglect and a parent's illegal occupation. Nor is the case one where rules of claim or issue preclusion would exclude evidence on an issue because that issue had been fully tried and determined in another proceeding, *e.g.*, a child sexual abuse prosecution where the defendant was found guilty. Obviously, regulation of admission of evidence by reason of issue or claim preclusion is permissible notwithstanding the fact that the evidence otherwise would seem to be relevant. *See* Wright and Graham, Federal Practice and Procedure: Evidence 229, § 5200 (1978) ("substantive rules [*i.e.*, laws] of admissibility are not altered by Rule 402 and equivalent provisions"); *id.* at 226, § 5199 ("exclusion may be required by some rule of substantive law"); *id.* at 240-42, § 5203.

rule expressly states that it covers "civil, criminal and juvenile court proceedings." OEC 803 (18a)(c).

That rule requires examination on the record and requires a higher standard of proof of emotional damage to the child than are found in the court's *dicta* in the present case. Most significantly, the evidence that the child could give still comes in. The legislature's rule places the relevant evidence on the record; the rule in the lead opinion's *dicta* may, if the criteria created in it are satisfied, exclude relevant evidence. Confrontation and some cross-examination are no doubt impacted by the legislative rule protecting children in the limited circumstance and terms described. But the court is not deprived of the testimony as a whole, and the ability of a party to call a witness possessing relevant testimony is not totally thwarted, as would potentially be possible under today's *dicta*.

Of course, the legislature has not spoken in the context of a case like this one involving parental neglect. But the differences between the lead opinion's choice and the choice of the legislature in an analogous, egregious situation should be rationally resolved before a rule that may be invoked to facilitate exclusion of relevant evidence is adopted. That has not occurred. At the least, the *dicta* in the present case is premature, and I do not join in it.