Submitted May 19, reversed July 22, 2015

In the Matter of J. D.-P.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*v.*
M. P.-P.,
*Appellant.*
Washington County Circuit Court
J090121;
Petition Number 04MJ090121;
A158219

356 P3d 1135

Peter Gartlan, Chief Defender, and Sarah Peterson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Karla H. Ferrall, Senior Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

FLYNN, J.

**FLYNN, J.**

Mother appeals from a judgment of the juvenile court that terminated her parental rights to her son, J, based on findings that mother is unfit and integration of the child into mother's home is improbable within a reasonable period of time due to conduct and conditions not likely to change, ORS 419B.504, and that termination is in the best interest of the child, ORS 419B.500.[1] On *de novo* review, ORS 419A.200(6), ORS 19.415(3), we affirm the finding that mother is an unfit parent and integration of the child into mother's home is improbable within a reasonable period of time. We conclude, however, that the state failed to prove by clear and convincing evidence that termination was in the best interest of the child. Accordingly, we reverse the termination of mother's parental rights.

At the time of the termination trial, J was not quite 10 years old. The juvenile court has asserted dependency jurisdiction over J multiple times since 2009. Most recently, the court asserted jurisdiction in December 2013, and J was placed in nonrelative foster care. J told his caseworker that, if he cannot live with mother, he would like to live with his adult sister. About three weeks before trial, the Department of Human Services (DHS) changed J's placement to family foster care with that sister. Three weeks was not enough time, however, for the state to evaluate the sister as a permanent adoptive placement.

On appeal, mother contends that the record does not establish a factual basis for termination or that termination is in the best interest of the child. The factual basis for the termination of parental rights, "unless admitted, must be established by clear and convincing evidence[.]" ORS 419B.521(1). To be clear and convincing, the evidence must make "the existence of a fact 'highly probable'" or be of "'extraordinary persuasiveness.'" *State ex rel Dept. of Human Services v. A. M. P.*, 212 Or App 94, 104, 157 P3d

---

[1] The trial court also based termination on a finding that mother failed or neglected to provide for the basic physical and psychological needs of the child for the six months prior to the filing of the petition, ORS 419B.506. The state concedes on appeal that the evidence does not establish this basis for jurisdiction, and we accept that concession as well founded, without further discussion.

283 (2007) (quoting *State ex rel Dept. of Human Services v. Hinds*, 191 Or App 78, 84, 81 P3d 99 (2003)). On *de novo* review of the record, we conclude that the evidence identified in the state's brief establishes by clear and convincing evidence the grounds for termination under ORS 419B.504. Further discussion of that evidence would not benefit the bench, bar, or parties.

Determining whether mother's parental rights should be terminated, however, requires an additional consideration—the best interest of the child. *See* ORS 419B.500 ("The parental rights of the parents of a ward may be terminated as provided in this section and ORS 419B.502 to 419B.524, only upon a petition filed by the state or the ward for the purpose of freeing the ward for adoption if the court finds it is in the best interest of the ward."). As the Supreme Court has explained, termination requires a two-stage analysis:

> "The first stage focuses on the conduct of a parent, *i.e.*, the alleged statutory grounds for termination. The second stage focuses on whether the best interests of the child will be served by termination. In a termination proceeding, if a parent's conduct justifies termination, then the best interests of the child are considered explicitly, and could even then prevent termination from occurring."

*State ex rel Juv. Dept. v. Beasley*, 314 Or 444, 451-52, 840 P2d 78 (1992); *see also State ex rel SOSCF v. Thomas*, 170 Or App 383, 396, 12 P3d 537 (2000) (under the two-step analysis, the "best-interests determination can prevent termination, even if the statutory grounds for termination are established").

Mother argues that the department failed to meet its burden to prove by clear and convincing evidence that it is in J's best interest to terminate mother's parental rights. We agree. The evidence is not clear and convincing that J's interests are best served by terminating mother's parental rights to make way for an adoption at this time. Indeed, given the overwhelming evidence regarding J's strong attachment to mother, it seems clear that an arrangement that accommodates a continuing relationship with mother would serve J's best interest.

Prior to trial, psychologist Dr. Glenna Giesick conducted an evaluation of J and prepared a report. She noted that, during his "Parent Attachment Structured Interview," J identified his mother as the "most important person in the world." J's permanency caseworker, Jose Landin, testified that, when he talked to J about mother, "his eyes would light up, and he always would say the same thing: 'I want to be with my mother.'" Landin also testified:

> "I think the last time when he was placed once more in [nonrelative] foster care, it was very hard for him. He was sad. He cried a lot. I gave him my business card and I told him, 'You call me if you need something, if you want to talk about something.' I would say 90 percent of the phone calls I got from [J] on our voice mail was, 'I want my mom.'"

We emphasize that the facts establishing mother's unfitness do not include any abuse of J. Moreover, caseworker Landin testified that he observed a "positive" and "nurturing relationship" between mother and J during J's visits with mother. Finally, according to psychologist Giesick, "[t]he risk of not returning [J] to his mother is that he will continue to mourn his loss in an extended manner which could interfere with his ability to attach to another family."

On *de novo* review of this record, we are not convinced that the state has proved by clear and convincing evidence that it is in J's best interest to terminate mother's parental rights.

Reversed.