ORTEGA, J., dissenting.
As the majority recognizes, this appeal does not involve a challenge to the juvenile court's findings that mother is unfit due to conduct or conditions seriously detrimental to her son and that integration of child into her home is unlikely to occur within a reasonable time because the conduct or conditions are not likely to change. Rather, the sole point of challenge here is the court's finding that DHS had not established by clear and convincing evidence that it would be in child's best interests to be freed for adoption. DHS asserts that it is entitled to the benefit of a presumption that adoption is in the child's best interests under these circumstances-and though the majority declines to decide the question of whether such a presumption exists, it effectively applies such a presumption by conflating the best interests inquiry with the inquiry regarding unfitness and integration within a reasonable time.
State intervention with a troubled family is justified by an overriding concern for the welfare of children and, consistent with that focus, the inquiry regarding a child's best interests must be separate from the inquiry regarding the parent's conduct or conditions and the likelihood of reunification. Indeed, as we have recognized previously, there are cases in which termination of the parental rights of an unfit parent is not in the child's best interests. Reviewing de novo the question of best interests in this case, I would conclude that no presumption applies and that, here, DHS failed to prove by clear and convincing evidence that termination is in child's best interests. Consequently, because *99 I would affirm (though for reasons different than the juvenile court), I dissent. *140 The interventions provided for in the juvenile dependency code, including mandatory reports and investigations of suspected child abuse, are undertaken "for the purpose of facilitating the use of protective social services to prevent further abuse, safeguard and enhance the welfare of abused children, and preserve family life when consistent with the protection of the child by stabilizing the family and improving parental capacity." ORS 419B.007. Court intervention is driven by a further concern regarding the welfare of children:
"* * * * *
"(2)(a) It is the policy of the State of Oregon to recognize that children are individuals who have legal rights. Among those rights are the right to:
"(A) Permanency with a safe family;
"(B) Freedom from physical, sexual or emotional abuse or exploitation; and
"(C) Freedom from substantial neglect of basic needs.
"* * * * *
"(3) It is the policy of the State of Oregon to safeguard and promote each child's right to safety, stability and well-being and to safeguard and promote each child's relationships with parents, siblings, grandparents, other relatives and adults with whom a child develops healthy emotional attachments.
"* * * * *
"(5) * * * Although there is a strong preference that children live in their own homes with their own families, the state recognizes that it is not always possible or in the best interests of the child or the public for children who have been abused or neglected to be reunited with their parents or guardians. In those cases, the State of Oregon has an obligation to create or provide an alternative, safe and permanent home for the child."
ORS 419B.090.
In general, parental rights may be terminated "only upon a petition filed by the state or the [child] for the purpose of freeing the [child] for adoption if the court finds it is in the best interest of the [child]." ORS 419B.500. In this *141 case, DHS sought to terminate mother's parental rights due to unfitness pursuant to ORS 419B.504 and, as the majority acknowledges, three findings are necessary to a termination based on unfitness: (1) that the parent is "unfit" (i.e. , the parent "has engaged in conduct or is characterized by a condition that is seriously detrimental to the child"); (2) that "integration of the child into the parent's care is improbable within a reasonable time due to conduct or conditions not likely to change"; and (3) that termination of parental rights is in the child's best interest. Dept. of Human Services v. B. J. J., 282 Or. App. 488, 502, 387 P.3d 450 (2016) (citing ORS 419B.500 ; ORS 419B.504 ; State ex rel. SOSCF v. Stillman , 333 Or. 135, 145-46, 36 P.3d 490 (2001)).
Each of those elements must be proved by clear and convincing evidence. ORS 419B.521(1) (providing that "[t]he facts on the basis of which the rights of the parents are terminated * * * must be established by clear and convincing evidence"). To meet that standard, evidence must make the existence of a fact "highly probable," or be of "extraordinary persuasiveness." Dept. of Human Services v. M. P.-P. , 272 Or. App. 502, 503-04, 356 P.3d 1135 (2015) (citing State ex rel. Dept. of Human Services v. A. M. P. , 212 Or. App. 94, 104, 157 P.3d 283 (2007) (internal citation omitted; internal quotation marks omitted)).
The state, relying on dictum in the Supreme Court's opinion in State ex rel. Juv. Dept. v. Geist , 310 Or. 176, 189 n. 15, 796 P.2d 1193 (1990), would have us apply, at least functionally, a legal presumption that termination of parental rights is in a child's best interests whenever the juvenile court finds that the parent is unfit and that reunification is improbable within a reasonable time. 310 Or. at 189, 796 P.2d 1193 ("Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time so as to provide [a wholesome and healthful] environment, the best interests of the child(ren) generally will require termination of that parent's parental rights."). The state reads our case law as applying only "limited exceptions" to what it terms a "preference"
*100 in Geist : where rupture of the bond with a parent will "severely traumatize" the child or where the loss of financial support outweighs the benefits of termination. See M. P.-P. , 272 Or. App. at 504, 356 P.3d 1135 (concluding that termination was not in the child's best interests where the *142 child's bond with the parent might interfere with his ability to attach to another family); State ex rel. SOSCF v. Reynolds , 149 Or. App. 36, 41, 941 P.2d 1059, rev. den. , 326 Or. 233, 952 P.2d 60 (1997) (rejecting a father's petition to terminate his own parental rights to avoid paying child support).
The state's position is inconsistent with the statute and reads too much into the Supreme Court's opinion in Geist , which did not concern the substantive law of termination of parental rights, but rather addressed whether a parent appealing a termination judgment could bring a claim of inadequate assistance of counsel on direct appeal. While our published cases frequently find that termination is in a child's best interests after the parent is found to be unfit and where we find that reuniting the family is unlikely to be possible within a reasonable time, it is not correct to assume that we apply a presumption to that effect-and indeed, doing so would have the effect of shifting the burden of proof from the state to the parent on an element of the state's case. The state bears the burden of proving the elements of a case for termination of parental rights, including whether termination is in the best interests of a child. See generally ORS 419B.521(1) ; State ex rel SOSCF v. Lehtonen , 172 Or. App. 584, 589-90, 20 P.3d 210, rev. den. , 333 Or. 73, 36 P.3d 974 (2001). The child's best interests are a separate element of the state's case, and termination may only be ordered "if the court finds it is in the best interest of the [child]." M. P.-P. , 272 Or. App. at 504, 356 P.3d 1135. Consequently, we have recognized that " '[i]n a termination proceeding, if a parent's conduct justifies termination, then the best interests of the child are considered explicitly, and could even then prevent termination from occurring.' " Id . (quoting State ex rel Juv. Dept. v. Beasley , 314 Or. 444, 451-52, 840 P.2d 78 (1992) ).
Moreover, reliance on an explicit or implicit presumption that termination is in a child's best interests whenever the parent is unfit and unlikely to be ready to reunite with the child within a reasonable time would be contrary to the child-centered analysis required by the juvenile code. See, e.g. , Dept. of Human Services v. M. H. , 266 Or. App. 361, 367, 337 P.3d 976 (2014) (noting that ORS 419B.498(2), which sets forth a non-exclusive list of circumstances under *143 which filing a termination petition might not be in a child's best interests, requires the court to make a "child-centered" determination about whether such circumstances exist). There is no reason to assume that our case law illustrates all possible circumstances where termination is not in the best interests of the child of an unfit parent. Indeed, in the past several decades, the private adoption world has moved toward open adoptions that facilitate continuing contact between adopted children and their birth parents, based on mounting evidence that continuing contact with a biological parent is frequently in the best interests of the child.[1] Termination of parental rights *101 generally does not provide for such continuing contact; we certainly may not assume so without a basis in the record, nor can we assume that some contact would not be in the best interests of a child without the state making that case by clear and convincing evidence.[2] *144 Although the majority does not purport to apply a presumption that termination is in the child's best interests in this case, it effectively does so by concentrating its analysis entirely on the evidence that established mother's unfitness-that mother had not overcome her problems with substance abuse, which continued to interfere with her ability to safely parent child, and that she had not made any effort to separate herself from father, who continued to actively use drugs, 292 Or. App. at ----, 422 P.3d at ----, and in assuming that termination of mother's parental rights was the only way to address child's need for permanency. However, the question of child's best interests is distinct from the question of whether mother is unfit and unlikely to be ready to serve as a custodial resource within a reasonable time.
The question before us is whether it is in this child's best interests to terminate his legal relationship with mother, who is not able to serve as a custodial resource. This child is in a stable placement with his uncle and aunt and, at his young age, is not even aware of the relative impermanence of his current placement. This case does not involve abuse, and mother and child have a positive attachment. Witnesses for the state testified that child absolutely seems important to mother and that she loves and demonstrates affection for and attachment to child. In supervised visits, he reacts positively to her, and during community visits with mother's family, child goes to her before anyone else. Child is happy when he is with mother and has difficulty separating from her. Dr. MacPhail, the psychologist who evaluated child, recommended permanency for child, but refused to opine on whether adoption was preferable to another permanent option like permanent guardianship.[3] The DHS caseworker, asked why she thought adoption was best for *145 child, simply explained that the agency interprets its statutory directive to "go for the most permanent plan."
Contrary to the view expressed by the state, dismissing the petition and establishing a permanent guardianship for child would accomplish permanency that cannot be disrupted by mother. See ORS 419B.365 (procedures and standards for permanent guardianship). ORS 419B.368(7) explicitly states that a parent cannot move to vacate or modify a permanent guardianship established under ORS 419B.365. The majority's concern about the stability of a permanent guardianship, 292 Or. App. at ----, 422 P.3d at ----, is therefore unfounded.[4]
*102 Under these circumstances, I cannot conclude that the state has established by clear and convincing evidence that severing the legal relationship between mother and child is in this child's best interests. Accordingly, because I would affirm the judgment dismissing the state's petition, I dissent.
Egan, C. J., and Lagesen, James, and Aoyagi, JJ., join in this dissent.

See generally Harold D. Grotevant et al ., Contact between Adoptive and Birth Families: Perspectives from the Minnesota Texas Adoption Research Project , Child Dev. Perspective (2013), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3743089/ (accessed April 12, 2018) (longitudinal examination of the consequences of variations in contact arrangements for birth mothers, adoptive parents, and adopted children, reporting greater satisfaction in relationships involving more contact and better support for identity development in adopted children); DH Siegel, Open adoption: adoptive parents' reactions two decades later , Soc. Work (2013), https://www.ncbi.nlm.nih.gov/pubmed/23409339 (accessed April 12, 2018) (reporting that adoptive parents recognize that openness serves the child's best interests); Deborah H. Siegel, Ph.D., & Susan Livingston Smith, LCSW, Openness in Adoption: From Secrecy and Stigma to Knowledge and Connections , Evan B. Donaldson Adoption Inst. (2012), https://www.adoptioninstitute.org/publications/openness-in-adoption-from-secrecy-and-stigma-to-knowledge-and-connections/ (accessed April 12, 2018) (addressing the trend toward openness in private adoptions in recognition of the negative impacts of secrecy and the benefits to adopted children of ongoing contact, and advocating support for birth and adoptive parents to improve the practice of open adoption); Dustin Freund, Open Adoption versus Closed Adoption-Top 5 Benefits of Open Adoption , Ezine Articles (2010), http://EzineArticles.com/expert/Dustin_Freund/864663 (accessed April 12, 2018) (addressing the benefits of open adoption to adopted children).

The majority misunderstands the purpose of our reference to the factual context and research findings which increasingly suggest that some degree of openness serves the best interests of many children. See , 292 Or. App. at ----, 422 P.3d at ----. The parent is not charged with the burden of proving what is in the child's best interests; rather, in a termination proceeding, the state has the burden of proving by clear and convincing evidence that termination is in the child's best interests-and here, as in other cases, it offers broad generalizations about what is best for children, not evidence specific to this particular child. Those broad generalizations are contradicted by mounting evidence in the world of private adoption, and that suggests an additional reason why we should view those broad generalizations with skepticism, and a further reason why those generalizations do not meet the state's burden of proof as to what is in the best interests of this child. We do not discharge our review function well when we allow the state (or any party) to characterize something as obvious (here, that closed adoptions are best for children) when there is significant reason to conclude otherwise.

MacPhail's opinion that, if a child were to have ongoing contact with a parent, that parent should be able "to meet his needs and to be supportive of him" does not add much to the required showing, by clear and convincing evidence, that severing this child's legal relationship with mother is in his best interests. Contrary to the majority's suggestion, 292 Or. App. at 137, 422 P.3d at 97, mother was not tasked with making a showing in that regard.

The majority bases that concern in part on the juvenile court's expressed belief that termination is only for "hopeless cases" and that a guardianship would "leav[e] a door open" as an "incentive to [m]other." On de novo review, we need not accept the juvenile court's reasoning in order to conclude that DHS did not establish that termination was in child's best interests. Perhaps the juvenile court's comments were intended to communicate something about the value of continuing contact rather than the permanence of a guardianship under ORS 419B.368(7) ; if it did assume that mother could vacate or modify a permanent guardianship under that statute, however, such an assumption is incorrect.