IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 2, 2022 Session

IN RE KANSAS B. ET AL.

Appeal from the Circuit Court for Williamson County
No. 2021-38      James G. Martin, III, Judge
_____

No. M2021-00827-COA-R3-JV
_____

The Tennessee Department of Children's Services ("DCS") filed a dependency and neglect petition with respect to four children, two of whom are the eldest children of the mother and her first husband and two of whom are the youngest children of the mother and her current husband. DCS filed the petition upon receiving a referral that the mother's seven-year-old daughter from her first marriage had been sexually abused by her stepfather, the mother's current husband. The stepfather sought to call the seven-year-old child as a witness during the trial, but the trial court denied his request upon balancing the probative value of the child's testimony with the potential emotional and psychological harm the child could suffer from testifying. The mother and stepfather have appealed. Upon thorough review, we conclude that the trial court erred in utilizing this balancing test and precluding the stepfather from calling the child as a witness. We therefore vacate the trial court's final judgment adjudicating the children dependent and neglected and remand the case so that the trial court may hear the child's testimony, provided that the child is competent to testify and that the court does not exclude the testimony pursuant to Tennessee Rule of Evidence 403. If the child is allowed to testify, the trial court should consider utilizing the accommodations set forth in Tennessee Rule of Juvenile Practice and Procedure 306 to ameliorate any potential harm that testifying may cause the child.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Vacated; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Benjamin K. Raybin, Nashville, Tennessee, for the appellant, Jonathan C.

Matthew R. Muenzen, Franklin, Tennessee, for the appellant, Amy W.

Michelle Lipford, Brentwood, Tennessee, Guardian Ad Litem.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Amber L. Barker, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

## I. Factual and Procedural Background

On June 8, 2020, DCS filed a "Petition for Dependency/Neglect and Severe Abuse, for Restraining Order and for *Ex Parte* Order" in the Williamson County Juvenile Court ("juvenile court"). Therein, DCS requested that the juvenile court adjudicate Kansas B.; Elijah B.; Isaiah C.; and Jonathan C., II (collectively, "the Children"), dependent and neglected. Kansas and Elijah were born of the marriage between Amy W. ("Mother") and Brian B. ("Father"), who were divorced in 2017 as a result of Mother's affair with Jonathan C. ("Stepfather"). Mother and Stepfather subsequently married and had Isaiah and Jonathan.

DCS's involvement with this family started on June 3, 2020, upon receiving a referral from Father, who alleged that Stepfather had sexually abused Kansas. Father reported the alleged abuse upon discovering Kansas, who was then seven years old, and her brother, Elijah, who was then five years of age, in an inappropriate, sexual position on that date. Father reported to DCS that Kansas had informed him that she learned the behavior from Stepfather, whom she claimed showed her pornographic videos. As a result, DCS arranged a forensic interview with Kansas and Elijah on June 4, 2020, at the Davis House Child Advocacy Center. While Elijah did not reveal any instances of sexual abuse, Kansas described in detail several instances of sexual abuse by Stepfather. Stepfather denied the allegations, and Mother informed DCS that she did not believe the veracity Kansas's statements. Furthermore, Mother would not agree to refrain from discussing the allegations with Kansas.

On June 8, 2020, the juvenile court entered an *ex parte* restraining order providing that: (1) Kansas and Elijah would remain in the care of Father, (2) Stepfather would have no contact with Kansas and Elijah, (3) Mother would have no unsupervised contact with Kansas and Elijah, (4) Isaiah and Jonathan would remain in Mother's care, (5) Stepfather would have no unsupervised contact with Isaiah and Jonathan, (6) Mother would not allow Stepfather to have unsupervised contact with Isaiah and Jonathan, and (7) none of the respondent parents would discuss the allegations with the Children. On June 10, 2020, the juvenile court appointed a guardian *ad litem* ("GAL") to represent the Children.

The juvenile court conducted a preliminary hearing on June 24, 2020. The juvenile court's preliminary hearing order reflected that Brittany Potts, an investigator for Child Protective Services with DCS, testified concerning the allegations and the forensic

interview with Kansas. DCS played the forensic interview in its entirety during the hearing. By reason of the testimony and forensic interview, the juvenile court found probable cause that the allegations in the petition had occurred. The juvenile court further found that the forensic interview was "deeply disturbing and credible." The juvenile court's order provided that the restraining order would remain in place.

On September 11, 2020, Stepfather filed a "Request for Order Compelling Testimony of Minor Witness," in which he requested that the juvenile court compel Kansas to testify at the adjudicatory hearing, then scheduled for October 19 and 23, 2020. The juvenile court took the motion under advisement pending receipt of additional authority to be provided by either party.

The juvenile court conducted an adjudicatory hearing on October 19 and 23, 2020, during which Kansas did not testify. In an adjudicatory order entered on November 2, 2020, the juvenile court made extensive findings of fact based on the testimony and evidence presented. The juvenile court found clear and convincing evidence that the Children were dependent and neglected, pursuant to Tennessee Code Annotated § 37-1-102(b)(13)(F) and (G) (Supp. 2021), based upon the sexual abuse of Kansas perpetrated by Stepfather. The juvenile court further found that Stepfather had committed severe child abuse, pursuant to Tennessee Code Annotated § 37-1-102(b)(27)(C) (Supp. 2021), based on its finding that he committed aggravated sexual battery pursuant to Tennessee Code Annotated § 39-13-504 (2018). The juvenile court did not make similar findings against Mother or Father. The juvenile court ordered that Father would maintain custody of Kansas and Elijah and that Mother's visitation with the two children would continue to be supervised until she could participate in individual counseling and family counseling with Kansas. Also, Stepfather was ordered to submit to a psychological evaluation and psychosexual evaluation.

On January 25, 2021, the juvenile court entered a "Dispositional Order," finding that Mother had made progress relative to the Non-Custodial Permanency Plan. Mother had testified that she was in the process of divorcing Stepfather. The juvenile court requested that the Davis House Child Advocacy Center therapist involve Mother in family counseling with Kansas as soon as possible so as to provide the court with a recommendation for safely increasing Mother's contact with Kansas and Elijah. Additionally, the juvenile court ordered DCS to provide funding to Stepfather for a psychosexual evaluation and permitted DCS to close its case upon completion of Stepfather's evaluation and Mother's counseling services.

Stepfather and Mother filed separate notices of appeal to the Williamson County Circuit Court ("trial court"), appealing both the November 2, 2020 order and the January 25, 2021 order. On February 22, 2021, Stepfather filed a motion *in limine*, objecting to any use of Kansas's forensic interview as substantive evidence. In support, Stepfather urged that Father had coached Kansas and that "his actions and the actions of the forensic

interviewer tainted the forensic interview to the extent that the forensic interview is not reliable." Stepfather also filed a notice that he would be taking the deposition of Kansas on March 15, 2021.

In response, the GAL filed a motion to quash the deposition of Kansas. According to the GAL, Kansas's therapist advised that exposure to the stress of a deposition would not be in Kansas's best interest and that it would impose a substantial risk of trauma to her. Father filed a response to Stepfather's motion *in limine* and joined in the GAL's motion to excuse Kansas from participating in the deposition. Moreover, Detective Kendylle Cobb filed an affidavit in which she stated that the criminal investigation into the sexual abuse of Kansas was ongoing and that any deposition of Kansas could compromise the investigative process.

The trial court conducted a hearing regarding the various motions on March 5, 2021, and entered an order on March 9, 2021. The court granted the GAL's motion to quash the deposition of Kansas but did not preclude the possibility that Kansas could be called to testify at trial. The court reserved ruling on that issue until it heard some or all of the proof at trial. The trial was conducted on March 24, March 25, April 1, and April 16, 2021.

On April 6, 2021, prior to the close of trial, the trial court entered an "Order Addressing Issues for Determination." Therein, the court acknowledged that DCS sought to introduce out-of-court statements made by Kansas to Father and the forensic interviewer. After making extensive findings of fact, the court determined that the statements made by Kansas to Father and the forensic interviewer were trustworthy, as required by Tennessee Rule of Evidence 803(25), and therefore were admissible pursuant to the respective hearsay exception.

With respect to the issue of calling Kansas as a witness, Stepfather asserted his theory that Father had "intentionally or unintentionally coached the child" and that the forensic interviewer had failed to ask questions concerning the possibility of "coaching." Thus, Stepfather asserted that he should be given the opportunity to support his theory by calling Kansas as a witness. After the parties submitted briefs and presented arguments on April 16, 2021, the trial court denied Stepfather's request to call Kansas as a witness. In doing so, the court weighed the probable harm to Kansas caused by forcing her to testify against Stepfather's need to call Kansas as a witness. The court stated: "To subject Kansas to examination by [Stepfather's] counsel creates a threat of psychological harm to the child which cannot be warranted by the facts and circumstances of this case." The court included that Carey Lariscy, Kansas's therapist, testified as to her concern that examining Kansas as a witness may cause "re-traumatization." The court further found that the evidence presented against Stepfather was overwhelming, "certainly to a clear and convincing standard, if not beyond reasonable doubt." Accordingly, in the court's estimation, there was no probative value in permitting Kansas's testimony. The court also held that denying Stepfather's request to call Kansas as a witness did not violate his right to due process.

- 4 -

The trial court entered its final order on July 8, 2021, finding clear and convincing evidence that Kansas was dependent and neglected based upon sexual abuse perpetrated by Stepfather. The court specifically determined that Kansas was the victim of severe child abuse pursuant to Tennessee Code Annotated § 37-1-102(b)(27)(C) and that Stepfather was the perpetrator. This determination was predicated on the court's finding that Stepfather committed aggravated sexual battery pursuant to Tennessee Code Annotated § 39-13-504. As a consequence of the sexual abuse of Kansas, the court also found that all of the Children were dependent and neglected pursuant to Tennessee Code Annotated § 37-1-102(b)(13)(B) and (F). With respect to Mother, the court found the Children dependent and neglected due to her failure to believe Kansas's allegations of abuse. Moreover, the court noted that Mother had continued her relationship with Stepfather and allowed him to remain in her home after the allegations of abuse surfaced. Consequently, the court ordered that Stepfather maintain no contact with Kansas and Elijah and exercise only supervised contact with Isaiah and Jonathan. Mother's supervised visitation with Kansas and Elijah was kept in place, and the parents were ordered not to discuss the court proceedings with the Children "outside of a therapeutic setting with licensed counselors." Mother and Stepfather timely appealed to this Court.

## II. Issues Presented

Stepfather raises the following issues for this Court's review, which we have reordered and restated slightly as follows:

1. Whether the trial court erred in denying Stepfather's request to call Kansas as a witness during trial.

2. Whether the trial court erred by finding clear and convincing evidence that Kansas was dependent and neglected.

3. Whether the trial court erred by finding clear and convincing evidence that the remaining three children were dependent and neglected.

4. Whether a different trial court judge should be assigned if this Court remands for the trial court to consider Kansas's testimony.

Mother has presented the following additional issue, which we have restated slightly as follows:

5. Whether the trial court erred by finding clear and convincing evidence that Mother also bore responsibility for the Children's adjudication as dependent and neglected.

### III. Standard of Review

Concerning the standard of review in dependency and neglect cases involving severe child abuse, this Court has previously elucidated:

A child who is suffering from abuse is a dependent and neglected child. *See* Tenn. Code Ann. § 37-1-102(12)(G).[1] A determination that a child is dependent and neglected must be supported by clear and convincing evidence. *See* Tenn. Code Ann. § 37-1-129(a)(1) & (c). Severe child abuse in a dependency and neglect proceeding must also be established by clear and convincing evidence. *In re S.J.*, 387 S.W.3d 576, 591 (Tenn. Ct. App. 2012).

The "clear and convincing evidence standard" is more exacting than the "preponderance of the evidence" standard, although it does not demand the certainty required by the "beyond a reasonable doubt" standard. *In re C.W.W.*, 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000). The clear and convincing evidence standard defies precise definition. *Majors v. Smith*, 776 S.W.2d 538, 540 (Tenn. Ct. App. 1989). Evidence satisfying this high standard produces a firm belief or conviction regarding the truth of facts sought to be established. *In re C.W.W.*, 37 S.W.3d at 474. Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992).

Our review of the trial court's determinations on questions of fact is de novo with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Whether a child has been proven dependent and neglected by clear and convincing evidence is a question of law which we review de novo without a presumption of correctness. *In re H.L.F.*, 297 S.W.3d 223, 233 (Tenn. Ct. App. 2009). To the extent the trial court's determinations rest upon an assessment of the credibility of witnesses, the determinations will not be overturned absent clear and convincing evidence to the contrary. *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

*In re M.D.*, No. M2015-01023-COA-R3-JV, 2016 WL 5723954, at *3-4 (Tenn. Ct. App. Sept. 30, 2016) (quoting *In re Kaitlynne D.*, No. M2013-00546-COA-R3-JV, 2014 WL 2168515, at *1-2 (Tenn. Ct. App. May 21, 2014)).

---

[1] The statutory definition of dependency and neglect is now codified at Tennessee Code Annotated § 37-1-102(13) (Supp. 2021).

## IV. Trial Court's Exclusion of Child's Testimony

We first address the threshold issues of whether the trial court erred in denying Stepfather's request to call Kansas as a witness and, if so, whether this error requires this Court to vacate and remand the case to the trial court to hear Kansas's testimony. Stepfather raises three arguments: (1) the trial court had no authority to deny his request to call Kansas as a witness under the evidentiary rules of Tennessee; (2) the trial court violated his "due process right to cross-examine the sole accuser against him in a case affecting his fundamental parental rights;" and (3) even if the trial court maintained the discretion to preclude Kansas as a witness by adopting and applying a balancing test utilized in other jurisdictions, the court abused its discretion by determining that the risk of harm to Kansas substantially outweighed the probative value of Kansas's testimony. Upon thoroughly reviewing the record and applicable authorities, we agree with Stepfather that the trial court lacked the discretionary authority under the evidentiary rules of Tennessee to exclude Kansas as a witness, if competent to testify, based upon a potential threat of emotional or psychological harm to her.

In its order denying Stepfather's request to call Kansas as a witness during trial, the trial court referenced two different approaches adopted by various appellate courts from other jurisdictions. Under the first approach, some appellate courts have held that trial courts lack the authority to preclude a child from testifying so long as the child is competent to testify. *See, e.g.*, *Bebee v. Hargrove*, 607 So. 2d 1270, 1272 (Ala. Civ. App. 1992) ("The court has no authority to exclude the testimony of children of tender years if they are otherwise competent."). Under the second approach, certain appellate courts have held that trial courts maintain the authority to preclude a child from testifying if the probative value of the child's testimony is "substantially outweighed by the risk of severe emotional or psychological harm to the child from testifying." *See State ex rel. Juv. Dep't of Tillamook Cnty. v. Beasley*, 840 P.2d 78, 84 (Or. 1992). The trial court adopted the latter approach, concluding that the risk of harm to Kansas from testifying outweighed any probative value that Kansas's testimony might have had, further finding no merit to Stepfather's "coaching" theory. Stepfather requests that this Court adopt the former approach and hold that "in a case regarding parental rights, a trial court lacks authority to deny a parent from calling an otherwise competent witness to testify at a deposition or adjudicatory hearing."

Although the parties cite as persuasive authority cases from other jurisdictions and apparently frame this issue as one of first impression in Tennessee, this Court has previously addressed this issue in *State, Dep't of Hum. Servs. v. Norton*, 928 S.W.2d 445, 447 (Tenn. Ct. App. 1996). In *Norton*, this Court considered whether the trial court had erred in precluding children, ages six and seven, from testifying during a termination of parental rights trial. *Id.* During trial, the State presented the testimony of an expert witness who "opined that requiring the children to testify would not be in their best interest." *Id.*

According to the State's expert, "[b]oth children shut down in therapy" and were reluctant to discuss "the issues because of the emotional pain associated with the issues and the blame they put on themselves." *Id.*

On appeal in *Norton*, this Court determined that the trial court had erred in precluding the children's testimony, explaining:

> Under Rule 601 of the Tennessee Rules of Evidence "[e]very person is presumed competent to be a witness except as otherwise provided in these Rules or by statute". According to the comment, children are included, but the presumption is rebuttable.
>
> * * *
>
> The evidence offered does not rebut the presumption of competency, but goes to the propriety of forcing the children to testify in court. If a witness is competent, the Court is <u>required</u> to accept his or her testimony, but there are circumstances where the Court should tailor the manner in which the evidence is received so as to minimize any harmful effects on the witness.

*Id.* at 447-48 (emphasis added). Thus, this Court has previously held that barring operation of some other applicable rule, trial courts lack the discretion to preclude the testimony of a witness so long as that witness is competent. In so concluding, this Court explicitly rejected consideration of the child's best interest or "the propriety of forcing the children to testify in court" in excluding potential testimony. *Id.*

In the instant case, DCS proffered testimony similar to that which the State's witness presented in *Norton*, namely, that forcing the child to testify would potentially cause her to suffer what Kansas's therapist called "re-traumatization." Neither DCS nor the GAL presented evidence concerning whether Kansas was a competent witness, instead emphasizing the emotional and psychological harm that requiring her to testify during trial could potentially cause. The trial court's analysis likewise addressed the potential harm to Kansas rather than her competency to testify.

We recognize that Tennessee Rule of Evidence 403 offers a similar balancing test to the one utilized by the trial court in this case. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Significantly, neither the child's best interest nor the threat of emotional or psychological harm to the minor witness are included in the list of concerns that a trial court may consider to balance against the probative value of the evidence sought to be admitted.

This Court has previously upheld a trial court's exclusion of a child's testimony based upon the Rule 403 balancing test in the context of a post-divorce custody dispute. *See Howe v. Howe*, No. E2016-01212-COA-R3-CV, 2017 WL 1324177, at *4 (Tenn. Ct. App. Apr. 10, 2017). In affirming the trial court's exclusion of evidence, this Court explained:

> The trial court is best situated to conduct the Rule 403 balancing test. Here, the proffered testimony concerned the Child's desire to live with Mother and her corroboration of Mother's factual allegations contained in the petition. Assuming, without deciding, that the Child's testimony was relevant, her corroboration of Mother's factual allegations was of minimal probative value when the record reflects that Father admitted to the majority of the allegations. Additionally, the Guardian advised the court of the Child's desire to spend more time with Mother. In deference to the trial court's discretion in such matters, we affirm the court's ruling.

*Id.* In *Howe*, the trial court properly utilized its discretion in excluding the child's testimony based upon its minimal probative value and the fact that the child's testimony would be cumulative. *Id.* The balancing test addressed in Rule 403 would have been the proper test for the trial court to utilize in the case at bar.

DCS posits that trial courts maintain discretion to permit or preclude child testimony predicated on the hearsay exception detailed in Tennessee Rule of Evidence 803(25). Rule 803(25) delineates the following exception to the hearsay rule provided in Tennessee Rule of Evidence 802:

> (25) Children's Statements. Provided that the circumstances indicate trustworthiness, statements about abuse or neglect made by a child alleged to be the victim of physical, sexual, or psychological abuse or neglect, offered in a civil action concerning issues of dependency and neglect pursuant to Tenn. Code Ann. § 37-1-102(b)(12), issues concerning severe child abuse pursuant to Tenn. Code Ann. § 37-1-102(b)(21),[2] or issues concerning termination of parental rights pursuant to Tenn. Code Ann. § 37-1-147 and Tenn. Code Ann. § 36-1-113, and statements about abuse or neglect made by a child alleged to be the victim of physical, sexual, or psychological abuse offered in a civil trial relating to custody, shared parenting, or visitation.

---

[2] The statutory definition of severe child abuse is now codified at Tennessee Code Annotated § 37-1-102(b)(27) (Supp. 2021).

> Declarants of age thirteen or older at the time of the hearing must testify unless unavailable as defined by Rule 804(a); otherwise this exception is inapplicable to their extrajudicial statements.

Tenn. R. Evid. 803(25). DCS contends that inasmuch as the rule requires that declarants who are thirteen years of age or older testify in order for their hearsay statements to be admissible, the converse must also be true, namely, that "children age twelve and under are *not* required to testify for their statements to be admissible." While we understand DCS's postulate, we nevertheless are unable to conclude that the absence of any like requirement for children under the age of thirteen demonstrably indicates that trial courts have discretion to exclude their testimony based upon a balancing test not contained in Tennessee's rules of evidence.

On this point, DCS asserts that if children under the age of thirteen were "always required to testify when their out-of-court statements are admitted, this hearsay exception would be nullified." Respectfully, in presenting this argument, DCS appears to conflate two separate questions: (1) whether in-court testimony is required for the admission of an out-of-court statement and (2) whether a trial court may exclude the testimony of a child who is otherwise competent. Rule 803(25) only addresses the first issue—the prerequisites for the admissibility of the hearsay statements of a child. That rule, however, provides little guidance in our consideration of the second query.

This Court's conclusion that trial courts do not possess discretion to exclude a competent child's testimony based upon potential emotional or psychological harm does not nullify the purpose or effect of Rule 803(25). Even if trial courts are not permitted to exclude child testimony based upon potential harm, trial courts may still exclude child testimony based upon a balancing of the considerations outlined in Rule 403. In the event a trial court properly excluded a child's testimony predicated upon the Rule 403 balancing test, DCS would still be permitted to introduce the out-of-court statements of a child under the age of thirteen even though the child could not be called as a witness. Moreover, as Stepfather points out, not every respondent subject to a dependency and neglect action wishes to call the child as a witness. In those situations, Rule 803(25) still serves the purpose of relieving DCS from calling the child as a witness in order for the child's out-of-court statements to be admitted into evidence. Notwithstanding our holding, Rule 803(25) would permit DCS to introduce the out-of-court statements of a declarant under the age of thirteen without first having to call the declarant as a witness. Our conclusion that trial courts may not exclude the testimony of a child otherwise competent based upon potential harm does not impede the purpose, operation, or effect of Rule 803(25). Ergo, DCS's reliance on the referenced hearsay exception is unavailing.

Although we laud the trial court's thorough analysis and apparent grappling with this difficult issue, as well as the court's concern for the child's best interest and emotional and psychological well-being, we are constrained to determine that the court erred in

- 10 -

precluding Stepfather from calling Kansas as a witness based on a balancing test that does not lie in Tennessee's evidentiary rules. We must now consider the effect that the court's error had on the outcome of the trial. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."); *In re Melanie T.*, 352 S.W.3d 687, 698 (Tenn. Ct. App. 2011) ("If the appellate court concludes that a trial court improperly excluded otherwise admissible evidence, '[t]he erroneous exclusion of evidence will not require reversal of the judgment if the evidence would not have affected the outcome of the trial even if it had been admitted.'") (internal citations omitted); *see also Norton*, 928 S.W.2d at 448 (concluding that the trial court's error in excluding the child's testimony "more probably than not . . . did not affect the judgment, due to the substantial, clear and convincing evidence on the issue of termination.").

DCS argues that any error was harmless due to the trial court's conclusion that it would still find by clear and convincing evidence that Stepfather had sexually abused Kansas even if Kansas were to testify that she did not recall the abuse. In its order denying Stepfather's request to call and question Kansas as a witness, the trial court explained:

> Whatever her memory, or lack of memory, this Court cannot be persuaded that Kansas's disclosures at the time they were made to her father and to the forensic interviewer were not trustworthy, accurate and credible. This is not a close case. If Kansas remembered nothing during the course of her examination in these proceedings or remembered facts that were contrary to the facts that she disclosed to her father and the forensic interviewer, it would not alter this Court's opinion.

Accordingly, DCS contends that Kansas's testimony would not have affected the outcome of the trial.

Notably, Stepfather did not request to call Kansas as a witness to challenge her memory but rather to elicit whether Father had coached Kansas to fabricate the sexual abuse allegations.[3] In the event that Kansas had been permitted to testify and did, in fact, articulate that she had been coached by Father to fabricate the claims, then such testimony certainly could have affected the outcome of the trial. Whether Kansas would have testified that Father had coached her or suggested to her that she fabricate the allegations against Stepfather is unknown considering that Kansas was not permitted to testify and the forensic interviewer did not ask questions to gauge whether she had been coached. Nevertheless,

---

[3] Although Stepfather did not make an explicit offer of proof in compliance with Tennessee Rule of Evidence 103(a)(2), the substance of the evidence he hoped to elicit from Kansas was apparent from the context of the briefs filed and arguments presented before the trial court.

inasmuch as DCS's dependency and neglect action against Stepfather relies almost entirely on Kansas's out-of-court statements to Father and the forensic interviewer, it is impossible for this Court to know whether the excluded evidence would not have affected the outcome of the trial had it been admitted. *See Roberts v. Roberts*, No. W2016-01810-COA-R3-CV, 2017 WL 5634247, at *6 (Tenn. Ct. App. Nov. 22, 2017) (denying the mother's argument that the trial court's erroneous exclusion of the child's testimony amounted to harmless error when it was "simply impossible for this Court to know whether the exclusion of the Child's preference affected the outcome of the case").

For the foregoing reasons, we must remand the case for the trial court to consider testimony from Kansas, provided that she is competent to testify and the court does not otherwise exclude the evidence utilizing the Rule 403 balancing test.[4] *See Howe*, 2017 WL 1324177, at *4 ("The trial court is best situated to conduct the Rule 403 balancing test."). With respect to the trial court's role in determining Kansas's competency, we note that the "pivotal issue in the court's determination is the child-victim's ability to understand the necessity of telling the truth while testifying during the course of the trial" and that "[o]nce the trial court has ruled the child-victim is competent to testify, the [opposing party] has the burden of illustrating why the child [is] not competent." *See State v. Griffis*, 964 S.W.2d 577, 592 (Tenn. Crim. App. 1997). We emphasize that nothing in our Opinion should be interpreted as granting Stepfather's counsel the right to directly examine or cross-examine Kansas face-to-face in the courtroom and that the trial court maintains discretion to consider and implement the accommodations outlined in Tennessee Rule of Juvenile Practice and Procedure 306 to minimize the potentially harmful effects of testifying. The issues with respect to the merits of the trial court's conclusion that the Children were dependent and neglected, as well as Stepfather's due process claim, are pretermitted as moot.

## V. Conclusion

For the foregoing reasons, the trial court's judgment adjudicating the Children dependent and neglected is vacated. This case is remanded to the trial court for the court to permit Stepfather to call Kansas as a witness and for the court to hear and consider such testimony, provided that the court determines Kansas competent to testify and does not exclude the evidence pursuant to Tennessee Rule of Evidence 403. The trial court should, in its discretion, consider and implement any accommodations delineated in Tennessee Rule of Juvenile Practice and Procedure 306 if Kansas is permitted to testify. Pending adjudication of the dependency and neglect issue following remand from this Court, all of the trial court's safeguards and restraints concerning Mother's and Stepfather's contact

---

[4] We note that Stepfather has also requested that this Court assign a different trial court judge on remand due to his concern that he would not have "a fair opportunity to change the Trial Court's decision on the merits of the case." We have determined that Stepfather's request is moot inasmuch as the trial court judge who heard and adjudicated the case has since retired from the bench.

with the Children as delineated in its final order will remain in effect unless and until the trial court rules otherwise. These safeguards include: (1) maintaining custody of Kansas and Elijah with Father; (2) restricting Mother to supervised visitation with Kansas and Elijah, to be supervised by Father; (3) prohibiting Stepfather from maintaining any contact whatsoever with Kansas and Elijah; (4) restricting Stepfather to supervised visitation with Isaiah and Jonathan; and (5) prohibiting any of the parents from discussing the court proceedings with the Children outside of a therapeutic setting with licensed counselors. We reiterate that the trial court retains the authority to maintain the status quo or to modify these restrictions as it deems appropriate. Costs on appeal are taxed to the appellee, the Tennessee Department of Children's Services.


s/ Thomas R. Frierson, II_____
THOMAS R. FRIERSON, II, JUDGE